### SHEPHERDSON v. UNITED STATES.

(District Court, E. D. Pennsylvania. March 21, 1921.)

No. 6468.

1. **Army and navy ⬅51½, New, vol. 12A Key-No. Series—Notice by insured of change of beneficiary effective in war risk insurance.**

Where a soldier, holding a certificate of war risk insurance, payable to his minor son as beneficiary, on his remarriage had a letter written, signed by him, but written and witnessed by his superior officer, stating the fact of his marriage and that he desired the insurance changed, so that $6,000 should be payable to his wife and $4,000 to his son, which letter was forwarded in accordance with military requirements through the commanding officer to the Bureau of War Risk Insurance, there being at that time no regulations or forms prescribed for changing a beneficiary, such action *held* effective to change beneficiaries under War Risk Insurance Act, § 402, added by Act Oct. 6, 1917, § 2 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514uuu), though the letter could not be found and the change of beneficiary was not recorded in the bureau.

2. **Army and navy ⬅51½, New, vol. 12A Key-No. Series—Procedure to determine beneficiary of war risk insurance.**

A suit to determine the right to war risk insurance, authorized by War Risk Insurance Act, § 13, as added by Act Oct. 6, 1917, § 2 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514kk), *held* properly brought in conformity with Tucker Act, §§ 5, 6 (Comp. St. §§ 1575, 1576).

At Law. Action by Mary R. Shepherdson against the United States. Judgment for plaintiff.

J. G. Roper, and W. H. Caldwell, both of Philadelphia, Pa., for plaintiff.

Chas. D. McAvoy, U. S. Atty., of Philadelphia, Pa.

DICKINSON, District Judge. We have been obliged to dispose of this case wholly upon information gathered from the paper books, and

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

without access to either the legislation or the pleadings. If any question is raised in respect to either, the cause may be set down for re-argument.

[1] The following findings are made, classified as not in controversy and as controverted:

## Fact Findings.

The undisputed facts are:

(1) A certificate of war insurance, or what may be called a policy of insurance, was issued to George R. Shepherdson about December 1, 1917, in the sum of $10,000, with George R. Shepherdson, Jr., a son of the insured, named as beneficiary.

(2) The insured was at the time a widower, who subsequently, on December 22, 1917, was lawfully married to the plaintiff, Mary R. Shepherdson.

(3) The insured died in France on May 4, 1918. He was at the time of his death in active service, and a certificate of insurance was then in force.

(4) The Bureau of War Risk Insurance does not have on file any writings changing the beneficiary, and no such writings can be found, although diligent search has been made for them.

The sole fact in controversy is whether the insured changed the beneficiary named in the certificate. The finding made is as follows:

(5) The insured made and executed a writing, duly witnessed, addressed to the authorities in charge of the War Risk Insurance, directing a change to be made in the beneficiary of the certificate or policy, so that, instead of George R. Shepherdson, Jr., being named as the sole beneficiary, the beneficiaries named in the policy should be his then wife, Mary R. Shepherdson, in the sum and to the extent of $6,000, and his son, George R. Shepherdson, Jr., in the sum and to the extent of $4,000. This written change of beneficiary was received by the authorities in charge of the Bureau of War Risk Insurance not later than February 1, 1918. The particular and evidentiary facts upon which this ultimate fact finding of the receipt of the written paper making the change is made are found and set forth herein under the heading "Discussion," and are made part of this finding.

The conclusions of law reached are as follows:

## Conclusions of Law.

(1) Mary R. Shepherdson is the legal beneficiary in said certificate of policy of insurance, in the sum and to the extent of $6,000 and said sum is properly payable to her.

(2) George R. Shepherdson, Jr., is the beneficiary in said certificate or policy of insurance in the sum and to the extent of $4,000, which said sum is properly payable to him, or his guardian, or other legal representative.

(3) Mary R. Shepherdson is entitled to judgment in the sum of $6,000.

The reasons which have led us to the conclusions indicated are set forth under the head "Discussion," and are made part of these findings or conclusions of law.

## Discussion.

A Bureau of War Risk Insurance was established by an act of Congress (Comp. St. §§ 514a–514j). No question is raised or controversy exists in respect to the moneys due thereunder to the proper beneficiary. The United States as a party defendant or respondent admits this sum to be in its hands awaiting determination of the question to whom it is payable, and the United States has expressed its willingness to make payment when this question has been determined in such manner as that it will be protected by any payment made. The United States is to all intents and purposes a mere stakeholder asking for protection as such, but asserting on its own behalf no other rights.

Notice to the beneficiary originally named in the certificate of this action has been given, and the beneficiary has asked leave to intervene as a party defendant by his guardian, and has so intervened, and was represented by counsel at the trial. The formal, technical questions which may suggest themselves as thus arising are hereafter discussed and disposed of. This feature of the case is alluded to now merely for the purpose of clearing the way to a discussion of the main and real questions involved in the cause.

Starting with the certificate or policy of insurance, we have the fact presented that by it no contractual relations are established between the widow, Mary R. Shepherdson, and the United States, as insurer. On the face of this instrument George R. Shepherdson, Jr., alone sustains this contractual relation, and he alone, or some one on his behalf, as his guardian or otherwise, he being a minor, possesses the right to present any claim for payment.

The act of Congress permits the insured to name any one (so far as affects the question before us) as beneficiary, and the insurance money then becomes payable to the beneficiary named. The act further provides, however, that—

"Subject to regulations, the insured shall at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries." Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 514uuu.

The act also provides:

"That the director, subject to the general direction of the Secretary of the Treasury, shall administer, execute, and enforce the provisions of this act, and for that purpose shall have full power and authority to make rules and regulations not inconsistent with the provisions of this act, necessary or appropriate to carry out its purposes, and shall decide all questions arising under the act, except as otherwise provided in section 5.

"Wherever under any provision or provisions of the act regulations are directed or authorized to be made, such regulations, unless the context otherwise requires, shall or may be made by the director, subject to the general direction of the Secretary of the Treasury. The director shall adopt reasonable and proper rules to govern the procedure of the divisions and to regulate and provide for the nature and extent of the proofs and evidence and the

method of taking and furnishing the same in order to establish the right to benefits of allowance, allotment, compensation, or insurance provided for in this act, the forms of application of those claiming to be entitled to such benefits, the methods of making investigations and medical examinations," etc. Section 514kk.

Under the authority thus conferred the following regulation relative to making a change of beneficiary was issued in the form of Treasury Decision No. 25:

"Every change of beneficiary should be made in writing, and shall be signed by the insured and witnessed by one person. No change of beneficiary shall be valid unless and until it is recorded in the Bureau of War Risk Insurance. A change of beneficiary shall, wherever practicable, be made upon blanks prescribed by the Bureau."

There is a further provision:

"That in the event of disagreement as to a claim under the contract of insurance between the Bureau and any beneficiary or beneficiaries thereunder an action on the claim may be brought against the United States in the District Court of the United States in and for the district in which such beneficiaries or any one of them resides, and that whenever judgment shall be rendered in an action brought pursuant to this provision the court, as part of its judgment, shall determine and allow such reasonable attorney's fees, not to exceed five per centum of the amount recovered, to be paid by the claimant in behalf of whom such proceedings were instituted to his attorney, said fee to be paid out of the payments to be made to the beneficiary under the judgment rendered at a rate not exceeding one-tenth of each of such payments until paid." Section 514kk.

The reference before made to section 5 (section 514e) of the act relates to disputes between beneficiaries. At the time the change of beneficiary was made by the insured in this case no regulations had up to that time been adopted. The regulations above quoted were subsequently made. The change of beneficiary in this policy so as to name Mary R. Shepherdson a beneficiary was made in writing, was signed by the insured, and witnessed by at least one person. No prescribed form of blanks for such purposes had up to that time been issued or were obtainable. There is no record in the Bureau of War Risk Insurance evidencing that the change had been there recorded.

The specific facts bearing upon this change are that on December 27, 1917, the insured wrote a letter to the War Risk Insurance to the effect that—

"I wish to change the policy of $10,000, which was made beneficiary to George, Jr. I wish to have it changed from $10,000, making my wife, Mrs. Mary R. Shepherdson, beneficiary for $6,000, and George, Jr., four."

The letter was inclosed in an envelope and addressed to the War Risk Insurance at Washington. It had a return address on it, and was duly stamped and mailed on that date. Shortly after the marriage of the insured he told Sergt. (afterwards Capt.) Samuel G. Stem, who was his superior officer, that he wished to change his insurance, so that his wife would have part of it. In the latter part of December or early in January the officer wrote for him a letter stating:

"That he had been married; that he had previously had $10,000 of insurance in favor of his son, George, Jr.; that he had been married on a certain date; that he desired to change that so that $6,000 should be payable to his wife and $4,000 to his son."

The insured signed the letter, which the officer witnessed, and it was forwarded through military channels to the Bureau of War Risk Insurance. The soldier's record was changed, so as to conform to this change in the beneficiary of the policy. The forms used for the purpose were used so far as up to that time they had been supplied. The letter was sent, in accordance with the military requirements, through the commanding officer. The soldier's record was also forwarded. The writing changing the beneficiary was mailed to the Bureau of War Risk Insurance. It was sent as official business, and was in an official envelope, unstamped as official mail. A copy was kept of the letter and filed with the official records. This copy, along with the soldier's record, was sent to the sick bay, U. S. Army Transport No. 22, who sent it to the Camp Hospital at Brest. Neither the original nor the copy can be found, although a very thorough search has been made.

The evidence fully justifies the finding made that the insured had a well-defined intention to make the indicated change of beneficiary; that he carried this intention into effect by making the change in writing, signing and having it witnessed; and that it was sent to the Bureau of War Risk Insurance for filing, and was there received. A copy was filed with the service record papers of the insured, and these papers were at the hospital base in Brest, France, where the soldier was stationed, and where he died. There is also evidence to compel the finding that the present records of the Bureau of War Risk Insurance do not show the filing or recording of any such change of beneficiary. The further fact finding is made that the records showing the change of beneficiary and the copy of the paper making the change have been lost or destroyed.

The foregoing findings resolve the questions involved in this case to two. One is the substantive question of whether the existence of a record with the Bureau of War Risk Insurance is essential to a change of beneficiary. The other is the procedural question of how the rights of the beneficiary are to be enforced.

Without entering into any lengthy discussion, we content ourselves with the expression of opinion that the change of beneficiary as found to have been made was effective. The act of Congress gives the right to the insured to change the beneficiary, without further limitation of the right than that it shall be effectuated in accordance with regulations. There were at the time no regulations controlling it, so that the right was an absolute one. If the question now presented involved the protection of the United States in a payment made in accordance with the records, it would be one of more importance than it now presents as a question wholly between contesting beneficiaries. Having the opinion, which we have expressed, that the insured had the right to make the change, this carries with it the vested right of the beneficiary in the policy as soon as the change was in fact made. The beneficiary

having this right, we are of the further opinion that it is not lost to her because the official records of the transaction have been mislaid or destroyed. The written paper, if in existence, or the official record of it, would be merely the evidence that the change had been made. This evidence we do not have, but we do have the legal equivalent of it.

Since the trial there have been found papers relating to allotments of the soldier's pay. By stipulation these have been made parts of the notes of trial. The significance they are supposed to have is that the finding of papers relating to an allotment of pay negatives the finding which otherwise might be made from the other evidence in the case of a change in the beneficiary. We are unable to give this stipulated evidence that effect.

The finding of one set of papers does not negative the existence of papers not found. There is a presumption of regularity and of faithfulness with respect to official records which makes them evidentiary. The nonexistence of a record required to be kept is evidence on the question of the existence of a paper which regularly would have been recorded. It has therefore the significance of such evidence, but is in no sense conclusive, nor is it necessarily persuasive. The fact that the insured made the found change of beneficiary is found as a fact, notwithstanding the two other facts, which are also found, that no record of this change appears where such record should be, and that a record of a change in the allotments of pay does so appear.

There is a possible point to be made, which has not been made, based upon the distinction between a man expressing a wish, desire, or intention to make a change, or indeed effort to have such change made, in the name of such a beneficiary and the actual making of the change. We have used the words which we have employed advisedly. This is because one of the letters written by the soldier on the subject makes use of the word "wish," another of the letters uses the word "desire," and there can be no doubt that the soldier intended to make the change and made an effort to have it made.

We have made the finding that the change was made. We have done this because the act of Congress, in the absence of any forms prescribed by rules and regulations adopted, requires no form in which the change shall be expressed. It may in consequence take the form of a letter. The form of expression used in a letter is a mere choice of words. It is what is done, and not the words which express what is the thing, of which we are in search. It is not an uncommon thing for the writer of a letter, written to express a request or direction, to phrase it in a form in which the request or direction is indirect. A common form is, "May I be permitted," etc., or "I would like you, if you will, to do" certain things. This is in literal terms merely a request not a direction, but that is in real substance what it is. In like manner, looking to the substance of what the soldier did, we have made the finding that he actually made a change in the beneficiary, and that, although he literally expressed merely a wish, desire, or intention, or made an effort so to do.

[2] There only remains the procedural question. The consideration of this starts with the observation that the United States cannot be made the defendant in an adverse proceeding, except with its consent, evidenced by an act of Congress. We have an expression of this consent in this very act, and the jurisdiction conferred, and indeed the duty imposed, upon this court to determine the question here raised. This reduces the whole inquiry into one of the proper formal method of procedure. The present proceeding follows the procedure under the Tucker Act (24 Stat. 505). This method has had judicial sanction in Cassarello v. United States (D. C.) 265 Fed. 326.

There is still to be determined the form of judgment which should be rendered. In order that we may have the benefit of the views of counsel, and to give definiteness of date to the entry of the judgment, no formal judgment is now entered; but counsel have leave to move for judgment in such form as they may deem to be in accordance with the law, including disposition to be made of counsel fees and costs.