**SCHROEDER v. UNITED STATES et al.**

District Court, S. D. Ohio, E. D. February 21, 1928.

No. 449.

1. **Army and navy** ⟜51½—Aunt held entitled to take as beneficiary of war risk insurance, though she could not have been designated as such when application was executed.

Though aunt of insured soldier, who was also his foster mother, was not within permitted class of beneficiaries of war risk insurance under the statute in effect when insured executed application for war risk insurance, subsequent amendments of statute, including aunts and persons in loco parentis within permitted class, related back to time of passage of original act, and governed property rights growing out of war risk insurance relationship.

2. **Army and navy** ⟜51½—Unsuccessful attempt to probate will held immaterial, on issue whether will validly designated aunt as beneficiary of war risk insurance.

Unsuccessful attempt in state court to prove and probate will of deceased soldier, in which he designated aunt as beneficiary of his war risk insurance policy, *held* immaterial, on issue whether such will constituted valid designation of aunt as beneficiary of policy.

3. **Army and navy** ⟜51½—Beneficiary of war risk insurance may be designated in written instrument not measuring up to standard of validly executed will.

Instrument executed by soldier, when he executed application for war risk insurance, clearly denoting his intention to designate a beneficiary of the war risk policy by that means, is sufficient to sustain designation of beneficiary, irrespective of whether it measures up to the standard of a validly executed will.

4. **Army and navy** ⟜51½—Evidence held to show that deceased soldier executed will for purpose of designating his aunt and foster mother as beneficiary of his war risk insurance.

Evidence *held* to show that deceased soldier executed will, in which his aunt, who was his foster mother, was designated as beneficiary of his war risk insurance, for purpose of designating her as beneficiary, entitling her to reformation of application and certificate of war risk insurance.

Suit by Caroline I. Schroeder against the United States and others. Decree for complainant.

Hugo Chestosky, of Steubenville, Ohio, and Black & Burtner, of Cincinnati, Ohio, for plaintiff.

Haveth E. Mau, U. S. Atty., and Simon Ross, Asst. U. S. Atty., both of Cincinnati, Ohio, for defendants.

HOUGH, District Judge. The complainant, as aunt and foster mother in loco parentis of Herman H. Tuerck, deceased soldier, seeks in the bill, among other things, a reformation of the soldier's application and certificate of war risk insurance, by designating her as beneficiary thereof.

While in the service of the United States, on or about February 1, 1918, the soldier made application and was granted war risk insurance in the amount of $10,000, and thereafter a certificate was issued to that effect, being No. 1,506,030. He died in March, 1919. In his application he designated that in case of death the insurance should be paid to his estate. At the time of making his application he made a will, or signed a document in the nature of a will, under the advice of certain military officers having the insurance matters in charge, and delivered this document, together with his application, to them. The will was lost, mislaid, or destroyed.

Afterwards claim was made by certain of his heirs at law for the insurance, and an attempt was made to establish the lost will in the state court. This attempt did not succeed for want of sufficient evidence, and, although subsequently additional evidence was discovered, the judgment of the state court had become final before that discovery. The Bureau of War Risk Insurance thereupon began to pay the installments of the insurance to the heirs at law of the soldier.

This suit was then begun by the complainant, after the discovery of the additional evidence, in which she claims that by means of the will, executed at the time of the application, the soldier constituted and designated her the sole beneficiary. This claim is resisted by the United States and the other heirs at law, who have been made parties and have filed an answer to the complaint.

During the trial, however, it was stipulated that the complainant relinquish any claim of any part of the installments that had been distributed prior to the filing of the suit and notice thereof to the government. The stipulation then changes the aspect of the issue. The government becomes merely a stakeholder, and the complainant and the defendant heirs at law become contestants for the unpaid and undistributed installments of

insurance due by reason of the contractual relationship between the government and the soldier.

[1] Although, at the time the application was executed by the soldier, the act of Congress did not permit the complainant, under her relationship to the insured, to be a beneficiary to the insurance, yet the act provided that the relationship of insurer and insured should be subject to subsequent amendments thereto. Later amendments were passed by Congress, including the complainant, both as an aunt and as a person standing in loco parentis, among the class of permitted beneficiaries, and the courts have held that such amendments relate back to the time of the passage of the original act, and govern the property rights growing out of the war risk insurance relationship. Helmholz et al. v. Horst et al. (C. C. A.) 294 F. 417; White v. U. S. et al., 270 U. S. 175, 46 S. Ct. 274, 70 L. Ed. 530.

[2] The unsuccessful attempt to prove and probate the will in the state courts, and the adverse finding and judgment of those courts, have no pertinency, and can in no wise influence the outcome of the issue presented and the circumstances present in this case. The question is not whether the soldier left a valid will, but is whether he left a valid designation of beneficiary. The final judgment of a court, ordering a will probated, definitely settles the question of the making, execution and attestation of the will, and when such a will makes disposition of the proceeds under a war risk insurance certificate, evidence of persuasive character is furnished of the designation of the beneficiary or beneficiaries. Such proof, however, is not conclusive or exclusive. In Helmholz et al. v. Horst et al., supra, the Circuit Court of Appeals of the Sixth Circuit held that an instrument, purporting to be the insured's unprobated will, will be held admissible to show the intended beneficiary. It is also held, in Claffy v. Forbes (D. C.) 280 F. 233, that a letter addressed by the soldier to his mother, and not to the Veteran's Bureau, designating a niece as beneficiary in the event of the death of the mother, was effective to change the beneficiary under such contingency. In Ambrose v. U. S. (D. C.) 15 F.(2d) 52, where a soldier had his certificate of insurance payable to one of his sisters, but stated orally and by letters that this was for convenience only, and that he desired them to share equally, the court held that the beneficiary named receive the proceeds of insurance in trust for all. A change of beneficiary by letter was also upheld in Shepherdson v. U. S. (D. C.) 271 F. 330.

[3] We conclude, therefore, that an instrument executed in writing at the time of the application for the insurance clearly denoted an intention on the part of the applicant to designate a beneficiary by that means, which under the law at that time was not permitted to be designated in the application, that such character of designation is sustainable, irrespective of whether the instrument does or does not measure up to the standard of a validly executed will.

[4] What evidence is there in the record that a designation was made by the soldier at the time of his application, taking the form of an instrument in the nature of a will? A comrade, Findlay, company clerk of the soldier's company, testified that the soldier made out an application and was informed that he could not make his aunt the beneficiary thereunder, whereupon the soldier said to Findlay that, if he could not make it out to whom he pleased, he would not make it out at all, and then tore up the application. Subsequently the witness testified that Lieut. Searles, an officer of the company, told the soldier that he could make a will, which would accomplish that purpose. Col. Turney, the division judge advocate of the division to which the soldier belonged, testified that he recalled having dictated a will for Herman H. Tuerck to Sergeant Major Emmerman, in connection with Tuerck's application for war risk insurance, which the sergeant major took in long hand and transcribed, after which the sergeant major and the colonel signed as witnesses. The colonel further testified that the soldier stated that he had been kindly treated by his foster parents, that they were really the only parents he had ever known, and that he wished to have his property go to them, the only property within the recollection of the witness being his insurance policy; that Tuerck came back the following day, and executed the will, which was delivered to him. The colonel also testified that the will designated the foster parents as beneficiaries, according to his recollection; but it may have been only the mother.

The soldier wrote a letter to the daughter of his foster parents, which is in evidence, dated Camp Lee, May 28, 1918, in which he says: "Now tell mother not to worry about it, and take it as easy as she can; that I have everything fixed up O. K. I have the $10,000 insurance and two $100 Liberty bonds that will be paid up the July pay. When I took out the insurance, I had to make it to my estate, and then had to sign a separate will, that the government has now. If anything should happen, the government will notify you immediately. None of us have got-

ten any policies yet for our insurance, but the $6.60 is entered on the pay roll every month. Anything that the government has is good, and you can always get it."

Under this showing it cannot be doubted that the soldier executed a will for the purpose, probably the sole purpose, of designating his foster mother the beneficiary. After nearly 10 years, Col. Turney's inability to recollect as to whether it was the foster mother and father, or the foster mother, is not strange. The statement in the soldier's letter to his foster sister, that he made it to his mother, coupled with the acceptance of that theory by the foster father, who was a witness in the case, is persuasive that the latter was the fact.

The application and certificate of war risk insurance may be reformed by designating the complainant as the beneficiary thereof, and the installments due and payable upon such certificate from the date of notice to the Veteran's Bureau, of the pendency of this suit, is ordered in accordance with this decision.