**JOHNSON v. WHITE et al.**

No. 8653.

Circuit Court of Appeals, Eighth Circuit.

Feb. 6, 1930.

R. W. Robins, of Conway, Ark., for appellant.

John E. Miller, of Searcy, Ark. (Culbert L. Pearce, of Searcy, Ark., on the brief), for appellee.

Before STONE and GARDNER, Circuit Judges, and MILLER, District Judge.

GARDNER, Circuit Judge.

Appellant, as plaintiff below, brought this suit in equity against the United States and the defendant Esther Johnson White, for the purpose of recovering upon a policy of war risk insurance. A reformation of the policy was prayed, and a recovery thereon as so reformed.

It is alleged in the bill of complaint that on July 12, 1918, the defendant, United States of America, issued and delivered to Fred C. Johnson a policy of war risk insurance, insuring his life in the sum of $10,000 and agreeing that upon his death it would pay to such beneficiary, as might be designated by him, the sum of $10,000. That when the policy was taken out by Fred C. Johnson he was a single man, and the defendant Esther Johnson White was also then unmarried, and that Fred C. Johnson caused the defendant Esther Johnson White, who was his sister, to be designated as beneficiary in the policy. That thereafter Esther Johnson White married, and said Fred C. Johnson married the plaintiff.

It is then alleged that the insured went before the proper officers of the defendant United States and gave directions in the proper manner for changing the beneficiary so that the insurance should be made payable, in the event of his death, to the plaintiff, his wife, instead of the defendant Esther Johnson White, and that the insured was informed and advised by said officers that the change of beneficiary, as directed by him, would be made; and that shortly thereafter the insured became ill and continued ill until his death on January 1, 1919. That it was the intention of the insured, often expressed by him in conversations and letters, and as expressed in directions given by him to the proper officers of the United States, that the plaintiff should be the beneficiary under said policy.

These allegations of the complaint, to the effect that the insured intended to change the beneficiary in his war risk insurance, or that he gave directions for such change, were put in issue by the separate answer of the defendant Esther Johnson White. The answer of the United States is not material to the issues presented on this appeal.

By an amendment to her answer the defendant Esther Johnson White pleaded that the plaintiff's action was barred by the five-year statute of limitations, and, by an amendment the United States, pleaded that the sum of $6,382.50 had been paid to the defendant Mrs. Esther Johnson White as beneficiary, and further that, under the terms of the war risk insurance policy, monthly installments of $57.50 would be payable to the beneficiary until 240 monthly installments will have been paid, or until the beneficiary's death.

It was stipulated that in the event the court should find the plaintiff entitled to recover, the judgment, in so far as it affects the defendant United States of America, should be for only such installments of the insurance involved as had not already been paid to the defendant Esther Johnson White.

On trial of the suit decree was entered dismissing plaintiff's complaint, and from this judgment she prosecutes this appeal.

Fred C. Johnson was inducted into the United States Army on June 24, 1918, as a private soldier, and on January 1, 1919, while still in the service, he died. On July 12, 1918, a policy of war risk insurance was issued to him insuring his life in the sum of $10,000, and, being then a single man, he designated Esther Johnson, his sister (now Esther Johnson White) as beneficiary in the policy. Thereafter he ran away from Camp Pike, Ark., where he was stationed, without leave, and when so absent without leave on September 16, 1918, married the plaintiff, who survives him. At the time of this marriage the policy had not yet been delivered. It appears without dispute that prior to the time of his marriage he told the plaintiff that he would have the policy changed so that it might be payable to her, and he repeated this to her after their marriage. Under date October 17, 1918, the insured wrote the plaintiff, from Camp Pike, Ark., where he was then in the guardhouse as punishment for, having left the camp without leave, to marry the plaintiff, as follows: "My darling little girl. How is my little wife tonight? Fine I hope. I am just fine. As I told you, I am going to have my policy changed from Esther to you for it is my will and wish for you to have it. I told Orby (a brother) to watch the mail box and send it to me for I

want you to have it." In a later letter, dated November 4, 1918, addressed to the plaintiff, the insured said: "Say dear I gess you will get your alonting in little while. I am still trying to change my insurance to you." Orby Johnson, referred to in the above-quoted letter, was called as a witness on behalf of the defendant and on cross-examination admitted that he had received a letter from the insured instructing him to watch the mail box and get the policy of insurance when it came. This he says he did not do because the policy was delivered and he did not get to see it. It was shown by conclusive proof that prior to the trial this witness had stated in an affidavit that the insured wrote him and his wife to go to his sister, the defendant Esther Johnson White, and get the policy and send it to the insured so that he could have it changed to his wife, but that before he (the witness) could secure the policy and get it to him, the insured died.

The insured made statements to his father and mother and apparently to at least two of his brothers, indicating either that he intended to change his policy so as to name his wife as beneficiary, or that he had already done so. A brother, Charles, testified that the deceased had told him that he had made repeated efforts at the company headquarters to get his policy changed, and that "Fred (the insured) talked to me on his death bed about this insurance. He talked to me like he was under the impression that the insurance had been changed, or was in the hands of the company officers to change it." Oran Quattlebaum, who was at Camp Pike, Ark., with the deceased, states that he went with the deceased and one Earl Pickard to the company headquarters, where the deceased asked to have his insurance changed, and that he had said to the officer, "Well, I want this insurance policy changed." The officer then said, "Give us your wife's name and we will have it changed." The deceased then gave his wife's name and address to the company officer. That the deceased said he wanted the insurance changed from Esther Johnson to his wife.

Earl Pickard testified to practically the same incident. He says that the deceased told the officer that he wanted this insurance changed to his wife Vera, and that he left his wife's name and post-office address. The witness says, "I understood they told him if anything happened they would take care of it." Another witness, Allen Rusher, who was also a soldier stationed at Camp Pike at the time of this occurrence, testified that he had had a conversation with the deceased after his marriage, and that deceased had told him he wanted to change his war risk insurance to Vera Johnson his wife. This witness also testified that he saw the deceased when he was writing the letter of October 17, 1918, above set out.

With reference to some confusion which seems to have arisen as to the company in which the deceased from time to time belonged, the witness Earl Pickard said, "You know we were transferred like a bunch of sheep and did not know where we were." Another witness testified that "Soldiers were transferred from one company to another in such manner that you couldn't tell today what outfit you was going to belong to, for as soon as they got in a new bunch and they had a vacancy then sent them to it. I handled the transfers for the 40th battalion. You knew what company you were in today, but maybe you would not be in the same company tomorrow."

While the brief of appellee contains some suggestion that the letters above quoted may have been spurious, we think the suggestion is not warranted from the record, as practically all of the witnesses called were in position to have testified as to the handwriting, but none of them questioned its genuineness, so that it must be accepted as genuine.

The insured had the absolute right to designate, within the classes limited by the statute, the beneficiary in this policy and also to change the beneficiary if he saw fit so to do. The uncontradicted testimony is convincing that he not only desired and intended to make this change, but that he acted on this intention and attempted to effect such change.

There remains to consider only whether or not this intention was so expressed and acted upon that it can be made effective. It must be borne in mind that this young man was illiterate, apparently somewhat subnormal intellectually, inexperienced in matters of business, and that during all the time in question he was serving as a soldier. A part of the time, at least, he was in the guard house for having run away from camp without leave at the time he married plaintiff.

Shortly after his conversation with the company officers with reference to this insurance, he was transferred to Camp Mead near New York City. At a later time, not clearly shown, he returned to Camp Pike. He became sick about a month before he died, his death being due to influenza and spinal meningitis.

When the insurance was applied for he was unmarried, as was also his sister, and naturally enough he then designated her as the beneficiary. Later he was married to the plaintiff. The sister was neither actually, legally, nor morally a dependent upon him, whereas his wife was at least legally and morally so dependent. The very purpose of the act of Congress providing for this class of insurance was "To give insurance to those who entered the military and naval service and to protect those who were dependent upon them." Helmholz v. Horst (C. C. A.) 294 F. 417, 420. The insured owed a legal duty to support his wife and the most natural thing for him to have done under all the circumstances was to have named her as beneficiary in his war risk insurance, instead of his sister.

■ It is urged on behalf of appellee that the change of the beneficiary was not made in the manner required by the regulations, and that the change could only be made in the manner as provided. The regulations, however, were largely for the protection of the government, and could be waived by the government. Deceased was in the military service and made an effort, in good faith, to have this policy changed. He applied to the officers in charge of that branch of the service, requested them to make the change, and was given what seemed to him assurance that the change either had been or would be made. The evidence is convincing that the insured intended to change the beneficiary and name the plaintiff instead of his sister as such beneficiary. Mere intention so to do is not sufficient, but here this intention was followed by acts through which he attempted to accomplish this change. Not only did the insured express his purpose and intention to make this change, but he did everything he might reasonably have been expected to do, under the circumstances, to effectuate such change.

■ As said by Mr. Justice Holmes in White v. United States, 270 U. S. 175, 46 S. Ct. 274, 275, 70 L. Ed. 530, in referring to a contract of war risk insurance, "The insurance was a contract, to be sure, for which a premium was paid, but it was not one entered into by the United States for gain. All soldiers were given a right to it and the relation of the Government to them if not paternal was at least avuncular. It was a relation of benevolence established by the Government at considerable cost to itself for the soldier's good. It was a new experiment in which changes might be found necessary, or at least, as in this case, feasible more exactly to carry out his will." See, also, Gregg v. United States (C. C. A.) 15 F.(2d) 8. The intention, desire, and purpose of this soldier should, if it can reasonably be done, be given effect by the courts, and substance, rather than form, should be the basis of the decisions of courts of equity. The clearly expressed intention and purpose of the deceased to have his wife named as the beneficiary in this insurance should control, and should not be thwarted by the fact that all the formalities for making this purpose effective may not have been complied with. In the cases cited by appellee it will be noted that there was ample opportunity, while the assured was not in the military service, to have complied with the required formalities in effecting a change in beneficiary. Thus in the case of Leahy v. United States (D. C.) 10 F.(2d) 617, no unusual circumstances existed to prevent a compliance with the government requirements. The insured was a lawyer and two years had intervened between the time it was claimed that he expressed a desire to change the beneficiary and his death, and it is to be noted too that he did not die until 1923, long after the close of the war.

In Layne v. United States (C. C. A.) 3 F.(2d) 431, cited by appellee, there was claim of an antenuptial agreement but the marriage did not take place until April 16, 1919, after the close of the war, during which time no extraordinary circumstances existed to prevent or hamper the insured in making the change of beneficiary in the manner prescribed by the regulations.

In Chichiarelli v. United States (D. C.) 26 F.(2d) 484, 486, cited by counsel for appellee on oral argument, it is said that "the controlling feature in the case should be the real intention of the insured in regard to making a change in beneficiary, provided this may be reasonably ascertained." It is also said in that case that "a consideration of the evidence in this case directed to the sole purpose of determining the intention and wishes of the insured leads me to the conclusion that the findings and judgment of the court should be in favor of the plaintiff, widow, for the sum of $7,000 and for the intervener, mother, for the balance of the insurance accruing under the policy." In other words, the principle announced in that case is exactly the principle upon which this case should be determined, and, as above noted, the undisputed evidence leads to the irresistible conclusion that it was the intention of the insured to have the plaintiff named as the beneficiary.

■ Great latitude should be allowed in order to give effect to the acts and intentions of those in military service in time of war. This has become a public policy of practically every state of the union where statutes will be found making specific provision for nuncupative wills by soldiers or sailors in time of war, and the tendency of the courts is, and should be, to treat the soldiers in such matters with peculiar indulgence. We are of the view that the undisputed proof shows a sufficient designation of the plaintiff as the beneficiary in this policy. Helmholz v. Horst (C. C. A.) 294 F. 417; Gregg v. United States (C. C. A.) 15 F.(2d) 8; Shepherdson v. United States (D. C.) 271 F. 330; Morgan v. United States (C. C. A.) 13 F.(2d) 763; Peart v. Chaze (D. C.) 13 F.(2d) 908; Ambrose v. United States (D. C.) 15 F.(2d) 52; Schroeder v. United States (D. C.) 24 F.(2d) 420; Claffy v. Forbes (D. C.) 280 F. 233; Farley v. United States (D. C.) 291 F. 238.

It is urged by appellee that the decree should be affirmed because all of the testimony except the documentary evidence was given ore tenus, and the trial judge, having observed the demeanor of the witnesses and their manner of testifying, could better determine what weight should be given to their testimony. No specific findings were entered, but, in the opinion of the lower court, it is observed that a summary of all the testimony is given and the court concludes that "this proof is not sufficient to establish a change in the beneficiary. It at most shows only an intention to do so, which was never carried out." In other words, the cause was not determined upon the question of the weight of the testimony, nor the credibility of the witnesses, but upon the sufficiency of such testimony, as a matter of law, to entitle the plaintiff to the relief demanded.

■ The testimony, which in our view is compelling, stands without dispute, and hence the principle invoked by appellant has no application in this case. It is also urged that, in view of the fact that the plaintiff attempted to probate the letter, dated October 17, 1918, as a will, and the probate thereof was ultimately refused, she is precluded thereby from now contending that the letter is indicative of an intention, on behalf of the deceased, to change the beneficiary. This position is entirely untenable. The rejection of the letter as a will is not inconsistent with its use as a link in the proof showing the intention of the deceased, which, as we have already shown, he took steps to carry out.

The defendant Esther Johnson White pleaded the statute of limitations in the lower court, but the question was apparently not passed upon in that court. It is, however, urged in this court that the plaintiff's action was barred by the Arkansas statute of limitations which provides that "actions on promissory notes, and other instruments in writing, not under seal, shall be commenced within five years after the cause of action shall accrue, and not afterward." Crawford & Moses' Dig. § 6955. The government makes no claim under any statute of limitations, and in fact the government has filed no brief on this appeal and seems to have entered no appearance in this court. The bill of complaint in this suit was filed March 5, 1928; proceedings of various sorts had been pending through and by which the plaintiff was seeking to assert her right to recover on this insurance contract, and at one time at least, the letter referred to was, by order of probate court, admitted to probate as a will by and through which the plaintiff was adjudged to have been made the beneficiary under this insurance contract. This was later set aside and finally determined not to be sufficient to constitute a will.

The matter of the plaintiff's claim was also pending before the United States Veterans' Bureau, and on April 20, 1925, that Bureau held that "After a careful review of this case it was disclosed that there is ample evidence of the intention of the insured to change the beneficiary of his term insurance from his sister to his wife, and the letter of October 17, 1918, having been declared to be a will and admitted to probate, you are informed that the remaining installments of insurance are now payable to the widow, Mrs. Vera C. Johnson." It is to be noted that the decision does not appear to have been based upon the fact that the letter was declared to be a will, but upon a review of the case, which it is said disclosed that there was ample evidence of the intention of the insured to change the beneficiary. By Act of Congress approved May 29, 1928 (38 USCA § 445) it was provided that suits might be brought on policies of war risk insurance within six years after the right accrued, or within one year from the date of the approval of the act. The act also provided that "no state or other statute of limitations shall be applicable to suits filed under this section. This section shall apply to all suits now pending against the United States under the provisions of this section." Grigg v. United States (Sligh v. United

States) 277 U. S. 582, 48 S. Ct. 600, 72 L. Ed. 998.

It is contended that this statute is not binding upon the defendant Esther Johnson White, but, if applicable in this case at all, we are of the view that it is applicable to all those who assert any rights under the policy. It is to be borne in mind, however, that this is a suit in equity and not an action at law, and, so far as the defendant Esther Johnson White is concerned, the relief sought against her is purely equitable. A statute of limitations is generally construed as purely legal, as distinguished from an equitable defense. There is no general statute of limitations in the laws of the United States relating to suits in equity, and in such suits the federal courts are not bound by state statutes of limitations. Kirby v. Lake Shore & Mich. S. Ry. Co., 120 U. S. 130, 7 S. Ct. 430, 30 L. Ed. 569. True, there has been a disposition to accept the statutory requirements of the statutes prescribing the time within which suits may be brought, but it is to be observed that the Arkansas statute relied upon refers to actions on promissory notes or other instruments in writing. So far as the defendant Esther Johnson White is concerned, this is not such an action, as no recovery is sought of her on the instrument. In any event, it is not binding upon the federal courts in equity suits, although an applicable statute of limitations may. properly be considered by federal equity courts in applying the doctrine of laches. Benedict v. City of New York, 250 U. S. 321, 39 S. Ct. 476, 63 L. Ed. 1005. Under all the facts and circumstances as disclosed in this case, we do not think the suit of the plaintiff is barred either by any statute of limitations, or by laches.

It follows that the judgment of the lower court must be reversed. As has been noted, the subject-matter of this litigation has been a matter of controversy for some years. The defendant Esther Johnson White has already collected on this war risk insurance $6,-382.50 and plaintiff has, since the death of her husband more than eleven years ago, been deprived of all right of participation in this insurance contract. The suit is an equitable one, tried by the court, and the controlling testimony is practically undisputed. These considerations have convinced us that there is greater danger of injustice from the continuance of this litigation than from its termination, and we are persuaded that the ends of justice will be best served by directing the entry of decree for a reformation of the contract of insurance, and in favor of the plaintiff as prayed in her complaint, and for a recovery of such installments of the insurance involved as have not already been paid by the defendant United States of America to the defendant Esther Johnson White.

The cause is therefore remanded, with directions to enter such decree and judgment.