## COTTER v. UNITED STATES.
### Civil Action No. 3391.

District Court, D. Maryland.
April 30, 1948.

Leon A. Rubenstein and Hyman B. Rubenstein, both of Baltimore, Md., for plaintiff.

Joseph L. Carter and James K. Cullen, both of Balitmore, Md., for Charles Ashton Cotter.

C. Ross McKenrick, of Baltimore, Md., for the United States.

WILLIAM C. COLEMAN, District Judge.

This is a suit brought to recover from the United States the proceeds of a policy in the amount of $10,000 issued under the provisions of the National Service Life Insurance Act of 1940, 38 U.S.C.A. §§ 801–818, on the life of plaintiff's husband who was killed in the military service of his country.

The material facts are substantially as follows: The insured, Richard Francis Cotter, an enlisted man in the Marine Corps, was killed in the battle of Iwo Jima on March 16th, 1945. Until he was sixteen years old he had lived with his family in Cumberland, Maryland. Then, that is in 1938, he left home and obtained employment at several different places in Maryland. In 1940, while working at the Glenn L. Martin aircraft plant at Middle River, Maryland, he met the plaintiff whom he married on April 3, 1943. He was then twenty years old. He had enlisted in the Marine Corps shortly before his marriage and there had been issued to him the national service life insurance policy here in suit, in the amount of $10,000, in which he had designated his father as the beneficiary. However, his wife, the present plaintiff, claims that following her marriage to the insured, he made her the beneficiary in place of his father.

The practice followed at the Marine Corps Barracks, Quantico, Virginia, during the year 1943, while the insured was in training there, in handling soldiers' requests for change of beneficiary, was to use one form known as No. 502 to cover every request for change of beneficiary in event of the soldier's death with respect to accrued and gratuity pay, personal effects, and also insurance, unless the soldier stated that his request was solely with respect to insurance, in which case he was given a different form. The soldier was required to execute this form in the presence of an officer.

That this practice was followed in Cotter's case, and that whatever he may have specifically asked for he was only given form No. 502, is strongly indicated by the testimony of the paymaster clerk at the Quantico Marine Barracks to the effect

that on April 15, 1943, Cotter, as disclosed by entry for that date in his service record book in the witness's hand writing changed the beneficiary of his six months' gratuity pay from his father to his wife, although the witness did not recall just what Cotter had said to him or what he had said to Cotter. However, this witness also testified that he did recall Cotter, and that Cotter had on numerous occasions complained that neither he nor his wife had been notified that she had been substituted as beneficiary —a type of complaint that he said was very common among the married men in his unit. The records of the Navy Department, Marine Corps Headquarters, disclosed no other evidence of intent on Cotter's part to change the beneficiary in the policy. The records of the Veterans' Administration reveal nothing that indicates a request for change of beneficiary.

That the aforegoing practice was current in the Marine Corps in April, 1943, was also confirmed by a Marine Colonel in charge of enlisted service records who, although he did not know Cotter and had served in a different unit, testified that it had been common practice in the Marine Corps during the earlier period of the War to use the aforegoing short-cut method of handling requests for all changes of beneficiary; that as a result, there was confusion, and uncertainty as to its adequacy, and that he had issued instructions to the administrative officers of the unit to which he was attached that every soldier's service record be reviewed before he went into combat, and that, if he had national service insurance, he be asked whether or not it was in the form he desired.

As disclosed by letters from Cotter to his wife while he was still in training on the Atlantic seaboard and also by his wife's testimony, no confirmation of change of beneficiary was ever received by either of them, either from the Marine Corps or the Veterans' Administration. In May, 1943, while Cotter and his wife were visiting his father in Cumberland, the father testified that he privately gave his son the insurance policy, saying "Now that you are married you take this policy." He said his son accepted it, saying that if he made any change in it, he would let him know. He

further testified that he never heard anything further from his son with respect to the policy. As also disclosed by Cotter's letters to his wife and his wife's testimony, after receiving the insurance policy from his father, he surrendered it to the person in charge of such matters at the Quantico Barracks for the purpose of having his wife substituted for his father as beneficiary, but the policy was returned to him without change and he was told that nothing further was necessary to be done. He so advised his wife, mailed the policy to her, and told her, as she testified, that "It was all fixed up, and that they just sent you a slip of paper, and did not change the policy."

Three close friends of Cotter and his wife testified that he told them he had made his wife the beneficiary under the policy, in place of his father. One of these friends said Cotter so told her in September, 1944, and the other two friends testified that he told them this in April, 1943, very shortly after Cotter's marriage, and again in August, 1944.

There is no evidence that at any time Cotter ever knew of any requirement with respect to changing his insurance beneficiary other than the practice followed by using form No. 502. He left for the Pacific Coast in the Autumn of 1944 and went overseas in December of the same year. His wife testified that she held the policy until notified that he had been killed in action. She then made claim under the policy to the Veterans' Administration. She was advised by letter that payment would have to be made to her father-in-law since he was the only one appearing on the Veterans' Administration records as beneficiary, unless she could produce satisfactory evidence proving that the beneficiary had been changed in conformity with legal requirements. Mrs. Cotter then sent the policy to her father-in-law, accompanied by a letter asking him to make a statement regarding her status with respect to the policy which the Veterans' Administration had told her was needed. Her father-in-law refused to do so. Her husband left no other property and no will.

In due course Mrs. Cotter filed a claim for payment under the policy. The same

was refused. No payments have been made under it to anyone, and the present suit has been brought to determine whether Mrs. Cotter or her father-in-law shall be recognized as the beneficiary. At the instance of the Government, the Court ordered that the father-in-law be made a party defendant.

On these facts the question thus presented is whether what the insured, the plaintiff's deceased husband, did with respect to substituting his wife for his father as beneficiary was sufficient in law to require the Government to give effect to this substitution.

The National Service Life Insurance Act of 1940 as amended provides, 38 U.S.C.A. § 802(g), that the insured, within the classes provided, shall have the right to designate the beneficiary or beneficiaries of the insurance "and shall, subject to regulations, at all time have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or benficiaries but only within the classes herein provided: * * *." By virtue of this provision, the Administrator of Veterans' affairs promulgated a regulation (No. 3447) which provided insofar as applicable to the present case, that "A change of beneficiary to be effective must be made by notice in writing signed by the insured and forwarded to the Veterans' Administration by the insured or his agent and must contain sufficient information to identify the insured. Whenever practicable such notice shall be given on blanks prescribed by the Veterans Administration. Upon receipt by the Veterans Administration a valid designation or change of beneficiary shall be deemed to be effective as of date of execution. * * *."

During the period with which we are concerned the Veterans' Administration, under the aforegoing regulation, issued a form for use by the insured in making a change in the named beneficiary. This form contained the following statement: "All previous designation of principal and contingent beneficiaries under national service life insurance policy No. ———— are hereby canceled and it is directed that said insurance be paid from and after my death as follows:" after which, place

was provided for the insured to enter the name of any new beneficiary; his or her relationship to the insured; the amount of insurance to be paid to such beneficiary, and also a place for the signature of the insured, and the signature and address of a witness to the signing. The form contained a direction that when completed it should be forwarded immediately to the office of the Veterans' Administration.

There is no claim that the requirements imposed by the aforegoing regulation and form were ever carried out in the present case. However, from the facts as above recited, it will be noted that there is no evidence that the insured was ever advised of the existence of either this regulation or the form, or of any necessity for complying therewith. The only form with respect to which the insured is shown to have had any knowledge is the one which the uncontradicted testimony indicates was supplied him by the Marine Corps paymaster clerk when the latter assisted the insured in making a change in the designated beneficiary on that form. It is reasonable to assume from the testimony that what the insured was told was necessary in order to change his insurance beneficiary, and what he did, was not in conformity with the then existing requirements of the Veterans' Administration for the reason that the latter had failed to set up adequate machinery at the Quantico Marine Barracks for making these requirements effective.

 This being true, it is equally reasonable to conclude that an insured soldier desiring to change the beneficiary in his life insurance policy should, under such circumstances, not be held at fault or his widow penalized for his non-compliance with such requirements. In other words, if the insured manifests an intent to make a change and has done everything reasonably within his power to carry out this purpose save only ministerial acts, the law will treat that as done which ought to have been done, and will give effect to the intent of the insured. So it has been held in numerous decisions. See especially, Collins v. United States, 10 Cir., 161 F.2d 64; Roberts v. United States, 4 Cir., 157 F.2d 906, certiorari denied Roberts v.

Roberts, 330 U.S. 829, 67 S.Ct. 870, 91 L.Ed. 1278; Kaschefsky v. Kaschefsky, 6 Cir., 110 F.2d 836; Johnson v. White, 8 Cir., 39 F.2d 793; Claffy v. Forbes, D. C., 280 F. 233; Citron v. United States, D. C., 69 F.Supp. 830; Rutledge v. United States, D. C., 72 F.Supp. 352; McKewen v. McKewen, 5 Cir., 165 F.2d 761; Shapiro v. United States, 2 Cir., 166 F.2d 240.

■ The basic question involved in every suit of this kind is whether the intent to change the beneficiary has been manifested to a sufficient degree by the insured. The facts in no two cases are alike. Therefore it is necessary to determine upon the particular facts in each individual case the degree of affirmative action necessary to give legal effect to the intention to make the change. The burden of proof rests upon the one who makes the claim as substituted beneficiary that is, the plaintiff in the present case. The decisions are uniform in exercising much latitude in order to give effect to the intention of those in military service, in time of war, with respect to beneficiaries of their insurance. In short, the tendency of the courts is and should be to treat soldiers in such matters with special indulgence. They are removed from their homes, from their normal occupations and from opportunity to attend to ministerial acts with the same degree of promptness and efficiency that would otherwise be afforded. Also, they have little or no choice with respect to what means they shall adopt for effectuating their intent in matters of insurance, and must rely upon the information given them by those in authority in their particular service unit. Thus, if they are told or are given reasonable ground for believing that if they do a certain thing that is all that is necessary to effectuate their intent, the law will treat their conduct in this respect as adequate even though not in strict compliance with the statute and regulations issued pursuant thereto.

In Johnson v. White, supra, the insured had obtained a war risk insurance policy in World War I, at a time when he was unmarried and had designated his unmarried sister as beneficiary. Thereafter, the insured and his sister both married and the insured wrote letters to his wife indicating his intention to make her the beneficiary. In addition, he made statements to members of his family evidencing the same intention. He also went to Army headquarters and requested that the insurance be changed to effectuate this intent and was advised that his wish would be carried out. However, he died in the service before any further formalities were completed. In holding that what the insured had done was legally sufficient to constitute his wife the substituted beneficiary, the Court said (39 F.2d 793, at page 796):

"It is urged on behalf of appellee that the change of the beneficiary was not made in the manner required by the regulations, and that the change could only be made in the manner as provided. The regulations, however, were largely for the protection of the government, and could be waived by the government. Deceased was in the military service and made an effort, in good faith, to have this policy changed. He applied to the officers in charge of that branch of the service, requested them to make the change, and was given what seemed to him assurance that the change either had been or would be made. The evidence is convincing that the insured intended to change the beneficiary and name the plaintiff instead of his sister as such beneficiary. Mere intention so to do is not sufficient, but here this intention was followed by acts through which he attempted to accomplish this change. Not only did the insured express his purpose and intention to make this change, but he did everything he might reasonably have been expected to do, under the circumstances, to effectuate such change.

"As said by Mr. Justice Holmes in White v. United States, 270 U.S. 175, 46 S.Ct. 274, 275, 70 L.Ed. 530, in referring to a contract of war risk insurance, 'The insurance was a contract, to be sure, for which a premium was paid, but it was not one entered into by the United States for gain. All soldiers were given a right to it and the relation of the Government to them if not paternal was at least avuncular. It was a relation of benevolence established by the Government at considerable cost to itself for the soldier's good. It was

a new experiment in which changes might be found necessary, or at least, as in this case, feasible more exactly to carry out his will.' "

In Kaschefsky v. Kaschefsky, supra, the insured, after naming one of his brothers as beneficiary in his war risk insurance policy, addressed several letters to one of his sisters expressing his intention to make all of his sisters and brothers beneficiaries, explaining that this was his original intent when he applied for the policy but that at that time, he was instructed to name only a single beneficiary. After the death of the insured, there was found a document purporting to be his will, whereby he disposed of his property other than the proceeds of the insurance policy. The father of the insured contested the validity of this document as a will but abandoned opposition upon a family agreement whereby the insurance money was divided equally among all the brothers and sisters of the insured in conformity with the expressed intent of the insured. In holding that the intent to make a change of beneficiary in the policy was supported by sufficient affirmative evidence, the Court said (110 F.2d 836, at page 837): "Upon the facts found, the court concluded that the plaintiffs had sustained the burden to establish a change of beneficiaries, and regarded the fact that the communications to that end did not reach the government until after the insured's death, to be immaterial. With these conclusions we agree. Claffy v. Forbes, D. C. Wash., 280 F. 233; Steele v. Suwalski, 7 Cir., 75 F.2d 885, 99 A.L.R. 588. The view expressed by the court in the first reference commends itself to us, 'Form, formality, and legal technicality must give way to common sense and remedial justice, when all doubt is removed as to the intent of the deceased soldier; and when the purpose of the law has been complied with, there should be no hesitancy in carrying out the express wish of such deceased. The letter is a designation signed by the insured and the fact that it was sent to the mother to·make the final designation, in the event of her death, instead of being sent to the bureau for record, should not defeat it.' [280 F. 233, at page 235.]"

While the facts in Roberts v. United States, supra, are perhaps not quite so similar to those in the present case as are the facts in the two cases which we have just analyzed, nevertheless, they are fairly analogous. There the insured originally named his father as sole beneficiary. Thereafter, he married and a few days after his marriage, both he and his wife, accompanied by two other naval officers, went to the person at their naval air station assigned to attending to matters of insurance. He stated his desire to change the beneficiary in his policy, was furnished a set of forms, was instructed to fill them out in pencil and also to sign a set of blank forms, upon which the clerk in charge agreed to enter the information furnished by the insured and then to take charge of the papers and progress them through the proper channel. The designation of the wife of the insured as beneficiary in his policy was never found in the Veterans' Bureau. However, a confidential form was found in the records of the Navy Department, in a sealed envelope to be opened only upon the death of the insured. This form contained the signature of the insured and the name and address of his wife, with a statement that he had $10,000 Government insurance of which his wife was the beneficiary. In addition, the insured had executed a beneficiary form designating his wife as beneficiary of a certain bonus to which he might be entitled. As opposed to this testimony, the father of the insured relied upon testimony of an uncle of the insured to the effect that the insured had told him of his intention to enter the service and to get married; that the uncle tried to dissuade him from doing so, saying that his parents had done everything for him and that if he were married and then killed, his wife would get the insurance; that the insured had replied that he would take care of his parents; and that at a later date, after the insured had entered the service and been married, he told his uncle that his insurance had been made out to his father. The lower court denied the widow's right to be recognized as the substituted beneficiary, but the appellate court reversed the lower court and in the course of its opinion

by Judge Soper, the following was said (157 F.2d 906, at page 909):

"It will be seen that the judgment below rests upon the absence of the change of beneficiary from the Government's files and upon the testimony of the uncle as to his conversations with the insured. It seems clear to us that these factors are insufficient to outweigh the clear and undisputed written evidence in the insured's admitted handwriting that he had designated his wife as beneficiary of the insurance policy, especially since these writings are supported by the disinterested testimony of the brother officer who assisted the insured to change the beneficiary and saw him execute the document and deliver it to the clerk at the Naval air base. The testimony of the officer was taken by deposition since he feared he would jeopardize his employment if he left his place of business in Macon and went to Norfolk for the trial; but the visit of the two couples to the air base for the specific purpose is corroborated by the three survivors, and the recollection of the brother officer is so explicit and circumstantial that we think it ought not be rejected.

"Moreover, it cannot be disputed that both officers executed the beneficiary slip for the bonus in favor of their wives on December 21, 1942, two days after they were married, because the documents were produced. The discrepancy in the dates in other papers and the failure of the change of beneficiary to reach its destination is easily understood when one considers the volume of business transacted at military posts and the character of the administrative organization thrown together to meet the emergency of war. Whatever doubts are engendered in the case are allayed by the unquestioned authenticity of the documents signed by the insured after his marriage in which he indicated that he had actually made the necessary change long before the present dispute arose. These papers manifest the normal desire of a recently married man to protect his wife, and lead us to the clear conviction that the findings below were erroneous in this respect and should be reversed."

In the present case, counsel for the father of the insured rely upon Bradley v. United States, 143 F.2d 573, a decision of the Circuit Court of Appeals for the Tenth Circuit, certiorari denied 323 U.S. 793, 65 S.Ct. 429, 89 L.Ed. 632. There, an officer in the Air Force, United States Army, had originally designated his mother as beneficiary of his war risk insurance. Thereafter, upon marrying, he expressed to his wife and to fellow officers his intention to substitute his wife as beneficiary but no notice of any kind to this effect was ever sent by him to the Veterans' Administration. However, shortly after his marriage he had executed a confidential personal report required of all flying officers, the declared purpose of which, was to compile and maintain accurate personal records of all such officers. This report stated that his wife was the beneficiary of his war risk insurance. The original beneficiary brought suit to have her right to the insurance money established. The District Court ruled in favor of the widow of the insured but on appeal, the Circuit Court of Appeals reversed this ruling, holding that there was a lack of evidence of any affirmative act to effectuate the intention on the part of the insured to change the beneficiary, the confidential personal report executed by the insured not being considered sufficient for this purpose.

While the decision in the Bradley case, from which Circuit Judge Phillips dissented, appears to go somewhat counter to the weight of authority in that it imposes a more strict requirement with respect to effectuating intent to change the beneficiary than before or since this decision has generally been held to be necessary, we do not believe that there is anything in this decision indicating that to decide in favor of the widow in the case now before us would be inconsistent therewith. Clearly, on the facts, the present case is more closely akin to the other cases which we have just reviewed, including the Roberts case and we believe, just as in those cases, there is here sufficient and very definite evidence of affirmative acts on the part of the insured to effectuate his intention to change the beneficiary. The distinction is pointed out by Judge Soper in his opinion in the Roberts case by the following passages (157 F.2d 906, at page 909): "In the pending case, we have found that the insured not only expressed his intention to change

the beneficiary in the policy, but also set in motion the machinery devised by the United States to accomplish the desired result. In this way he performed the affirmative act for the lack of which the majority of the court in the Bradley case concluded that the change of beneficiary had not been accomplished. Since such an act was performed here, we have no occasion to consider the view expressed by Judge Phillips in his dissenting opinion in that case that the statement in a confidential report of an officer that he has designated his wife as beneficiary is itself sufficient to effectuate the change."

■ In the present case, apart from other evidence, we believe that the doing by the insured of everything that he was told, or was given reasonable ground to believe was necessary in order to effectuate his intention to make his wife the beneficiary, must be treated as sufficient in law to treat the change as having been accomplished. The testimony is clear that at the time Cotter took the steps that he did to change the beneficiary in his policy, there was confusion and misunderstanding among those in charge of such matters in the Marine Corps as to precisely what was required of the soldier in this respect. Apparently, this confusion and misunderstanding were due primarily to a lack of coordination between the Veterans' Administration and the Marine Corps. Under such circumstances, clearly where a soldier has done everything that his superiors advise him is necessary in order to effectuate a normal desire to protect his wife, she should not suffer because of a break-down in the machinery which was intended to be set up for the purpose of effectuating such desire, particularly when such break-down was not in the least due to any negligence or failure on the part of the insured himself but due to conditions entirely beyond his control.

We do not attach any real significance to the testimony of the father of the insured that the latter told him he would let him know if he substituted some one else as beneficiary in the policy. We may accept as true the father's statement that the son never notified him of the intended substitution of his wife as beneficiary. This may have been due to various things

—the intensified training for combat service which the insured was then undergoing, requiring his deep absorption in military matters, but perhaps it was mostly due to something which has been evident throughout the trial and which the Court cannot blink in evaluating the testimony. We have reference to the unfriendliness on the part of the father towards the insured and the plaintiff, his wife. Apparently, this arose or was accentuated by reason of the father's displeasure over the son's marriage. Suffice it to say that apart from the question whether or not there was any proper ground for such displeasure, with which we need not here be concerned, the position assumed by a parent of a deceased soldier, such as that assumed by the father of the insured in the present case, in opposing the widow's claim to what normally her husband would intend her to receive in the event of his death in the service of his country, is not commendable.

We do not deem it necessary to analyze other decisions in support of the conclusion we have reached, which are quite numerous. It is significant that a number of these cases disclose that a form known as W. D., A. G. O. Form 41, which correspond to Marine Corps Form 502 involved in the present case, was in use during World War II by the War Department, and that while originally designed, as was Form 502, for the purpose of designating a beneficiary for gratuity pay due in the event of death of the soldier while in active service, and never intended to be used for the purpose of changing the beneficiary under national service life insurance policies, nevertheless, it was used by Army officials both at home and abroad for the purpose of effecting a change of beneficiary with respect to the latter. This form, just as 502, was clearly adequate for this purpose. In Citron v. United States, supra, testimony to this effect was made the basis of the Court's decision for deciding that through the use of this form the insured soldier had made effectual a change of beneficiary from his mother to his wife.

To the same effect are the following as yet unreported decisions of various District Courts: Shannon v. United States, D. C.,

78 F.Supp. 263; Vaughan v. United States, D.C., 78 F.Supp. 494; Hartman v. United States, D. C., 78 F.Supp. 227; Farmakis v. United States, D. C., 78 F.Supp. 287; See also Flood v. United States, D. C., 78 F.Supp. 420.

One other question remains to be considered, namely, the amount of fee to be allowed plaintiff's attorney. The Act provides that as part of the judgment, the Court "shall determine and allow reasonable fees for the attorneys of the successful party or parties and apportion same if proper, said fees not to exceed 10 per centum of the amount recovered and to be paid by the Veterans' Administration out of the payments to be made under the judgment or decree at a rate not exceeding one-tenth of each of such payments until paid." 38 U.S.C.A. §§ 551, 817. In the present case, a fee of $800.00, or 8% of the amount of the judgment, would appear to be just and reasonable under all the circumstances. In cases of this kind, attorneys' fees must be kept on a moderate basis. By setting a maximum of 10%, the statute does not require or intend that such shall always be automatically allowed. The words of the statute are that the court "shall *determine and allow reasonable* fees" (Emphasis supplied.) We recognize that this litigation has required a great deal of time and work on the part of plaintiff's attorney and that had the same been expended in the usual type of private litigation, a larger fee might not be out of order. However, the Court must take into account the basic purpose of the statute, and the fact that the plaintiff has little if any resources of her own except what she earns.

Judgment will be entered in accordance with this opinion.