## UNITED STATES v. JOHNSON et al.

District Court, W. D. Kentucky.
Jan. 5, 1931.

T. J. Sparks, U. S. Atty., and Frank A. Ropke, Asst. U. S. Atty., both of Louisville, Ky.

W. A. Armstrong and Thos. A. Ballantine, both of Louisville, Ky., for defendants.

DAWSON, District Judge.

This cause is submitted upon the pleadings, there being no dispute as to the facts, which, briefly stated, are as follows:

Henry Eugene Johnson, Jr., on November 20, 1917, while in the military service of the United States, applied for and had issued to him a $5,000 war risk insurance policy, and in the policy he designated as equal beneficiaries his father, Henry Eugene Johnson, and his sisters, Susie Warner Johnson, Bessie May Johnson, Jessie Eugene Johnson, and Goldie Belle Johnson. On February 8, 1918, while in the service, he applied for and had issued to him an additional $5,000 war risk insurance policy and designated therein as beneficiaries his father, Henry Eugene Johnson, to the extent of $2,000; his sister Susie Warner Johnson to the extent of $2,000; and his sister Jessie Adamson to the extent of $1,000. Susie Warner Johnson has since married a man by the name of Bartley, and is the same person designated in the bill as Susie Bartley, and Jessie Adamson is the same person as Jessie Eugene Johnson, referred to in the first policy, she having married between its date and the date of the second policy. Goldie Belle Johnson is the same person as Goldie Thompson, she having married since the issual of the policies referred to, and the Bessie May Johnson referred to in the first policy issued thereafter married the defendant Charles E. Henderson and thereafter died, leaving surviving her her husband, Charles E. Henderson.

The premiums on these policies were regularly deducted from the pay of the soldier, up to and including his discharge from the United States Army on November 26, 1918, but after his discharge he paid no further premiums thereon.

After the issual of the two policies and shortly after his discharge from the United States Army, and prior to May 14, 1923, the insured married the defendant Georgia M. Johnson, and the defendant Patricia Louise Johnson is a child of that marriage, she having been born prior to May 14, 1923. On May 14, 1923, the insured executed United States Veterans' Bureau Form 526, known as "Application of Veterans Disabled in World War for Compensation and Vocational Training." In this application he was required to and did answer certain questions relative to war risk insurance granted him while in the military service, and among the answers he made was one to the effect that after his discharge he allowed his $10,000 of insurance to lapse. Question 47 in that application was as follows: "Have you since changed the beneficiary to some other person?" And his answer thereto was: "Would like to reinstate this insurance, if possible, and change beneficiary to my wife and baby."

The insured died on September 26, 1926, and at the time of his death the United States Veterans' Bureau had taken no action on the application and matters contained in Form 526, executed by the insured as above stated. On December 27, 1926, the United States Veterans' Bureau determined that the insured had been disabled in a compensable degree from the date of his discharge from

the military service, and that he had been permanently and totally disabled from August 24, 1923, to the date of his death on September 26, 1926, and that by reason of these disabilities, under the provisions of section 305 of the War Risk Insurance Act, as amended by the Act of July 2, 1926 (U. S. Code title 38, § 516 [38 USCA § 516]), there was due to and uncollected by the deceased veteran on the date of his permanent and total disability (August 24, 1923) sufficient compensation to reinstate as of that date $6,120.73 of said insurance. It seems to be admitted that the monthly benefits accruing to the insured under this reinstated policy from August 24, 1923, the date of his permanent and total disability, to September 26, 1926, the date of his death, amount to $1,337.22, which sum the administrator of the insured is entitled to collect. The controversy is over the remainder of the insurance.

The father and the sisters of the insured claim the insurance by reason of the designation of them as beneficiaries in the original policies. The wife and the daughter claim to be the beneficiaries (1) by virtue of the insured's statement made in Form 526 that he desired to reinstate the two policies and change the beneficiaries to his wife and baby; and (2) by virtue of the provisions of section 305 of the War Risk Insurance Act, as amended by the Act of July 2, 1926 (U. S. Code, title 38, § 516 [38 USCA § 516]).

██ I am of the opinion that the statement in Form 526, above referred to, not only shows an intention on the part of the insured to change the beneficiaries in his policies, but that it must be construed as a declaration of such change, and even though the Bureau did not formally act upon same during the lifetime of the insured, no one other than the government is in a position to complain, and it is not complaining. Compare White v. United States, 270 U. S. 175, 46 S. Ct. 274, 70 L. Ed. 530.

If I am in error in this conclusion, it seems to me that the provisions of section 516, title 38, U. S. Code, as amended by the Act of July 2, 1926, conclusively fix the rights of the parties. Prior to the Act of July 2, 1926, this section read as follows:

"Where any person has, prior to June 7, 1924, allowed his insurance to lapse while suffering from a compensable disability for which compensation was not collected and dies or has died, or becomes or has become permanently and totally disabled and at the time of such death or permanent total disability was or is entitled to compensation re-

maining uncollected, then and in that event so much of his insurance as said uncollected compensation, computed in all cases at the rate provided by section 302 of the War Risk Insurance Act as amended December 24, 1919, * * * would purchase if applied as premiums when due, shall not be considered as lapsed; and the United States Veterans' Bureau is authorized and directed to pay to said soldier, or his beneficiaries as the case may be the amount of said insurance less the unpaid premiums and interest thereon at 5 per centum per annum compounded annually in installments as provided by law." (43 Stat. 626, 38 USCA § 516.)

The Act of July 2, 1926, re-enacted this section in substantially the same language, and added this proviso:

"That insurance hereafter revived under this section and section 516b of this title by reason of permanent and total disability or by death of the insured, shall be paid only to the insured, his widow, child or children, dependent mother or father, and in the order named unless otherwise designated by the insured during his lifetime or by last will and testament." (44 Stat. 799, 38 USCA § 516.)

I think the term "hereafter revived," as used in the amendment, when reasonably construed, has reference to the act of officially determining that the policy, or some part thereof, had not lapsed at the date of the beginning of permanent total disability, or at the date of death, as the case may be.

██ Where the claim is being made by the insured, this involves the determination of the question of whether the claimant is permanently and totally disabled, and, if so, the date of the beginning of that disability. If the claim is made by a beneficiary, it involves the determination of the question of whether the insured was suffering from a permanent total disability at the time of the death, and, if so, the date of the beginning of that disability. In either of such cases, and in those cases where the beneficiary makes no claim that total permanent disability existed prior to the death of the insured, the next question to be determined is whether or not at the time the insured ceased to pay premiums on his policy he was suffering from a compensable disability, for which compensation had not been collected at the time of the beginning of the permanent total disability or death, and, if so, the amount of compensation thus due and uncollected; and, lastly, in every such case there is involved the determination of the question of what amount of insurance would have been kept alive at the date of such disability or death had such compensa-

tion been applied to that purpose. The determination of these facts in favor of the claimant revives or reinstates the policy, or a part thereof. The *act of revival* takes place on the date of such determination and not until then. The revival or reinstatement, when thus officially determined, is effective as of the date of permanent total disability or death, as the case may be. In other words, in the section quoted we have a proceeding not unlike the entry of a nunc pro tunc order in judicial proceedings. The order is *dated* as of the date actually made, but it is *effective* as of the date it should have been made originally. The facts justifying a revival of the insurance may have long existed, but it seems to me that there is actually no revival until these facts have been officially determined. I fully recognize that this interpretation of the law may operate to deprive some persons of the right to participate in the proceeds of such insurance in those cases where all the essential facts existed prior to July 2, 1926, who, but for the amendment, would be beneficiaries, but it must be borne in mind that no statutory beneficiary of these policies has any vested right in the statute making them beneficiaries.

The amendment of July 2, 1926, clearly evidences an intention on the part of Congress to limit the persons entitled to the benefits of reinstated or lapsed insurance, and under a rational and reasonable interpretation of its language it seems to me that the amendment applies to all those cases where the official determination that the policy or a part thereof was in force at the time of disability or death, was made after the date of the amendment. Under this construction of the statute the insurance was not revived until after July 2, 1926, and by the express provisions of the amendment of that date, the widow and child of the deceased veteran are entitled to the proceeds of the revived insurance which accrued after the death of the insured on September 26, 1926.

A decree will be drawn, conforming to the views herein expressed.