**PHŒNIX MUT. LIFE INS. CO. v. CUMMINGS et al. (CUMMINGS, Intervener).**

**No. 493.**

**District Court, W. D. Missouri, S. D.**

**Aug. 5, 1946.**

Henry J. Eager and Roy P. Swanson, both of Kansas City, Mo., and Ray Bond, of Joplin, Mo., for plaintiff.

Paul E. Bradley and George W. Wise, both of Joplin, Mo., for defendant Elsie Mabel White Cummings and J. J. Cummings.

Roy Coyne, of Joplin, Mo., for defendant Mildred E. Cummings

RIDGE, District Judge.

This interpleader action instituted in this Court by virtue of T. 28 U.S.C.A. § 41 (26), involves the proceeds of a life insurance policy issued on the life of James D. Cummings, who gave his life in defense of his country, in time of its greatest need.

James D. Cummings and Mildred E. Cummings were married in 1937. In the year 1939 James D. Cummings took out a policy of insurance on his life, naming his then wife, Mildred E. Cummings, the beneficiary therein. The right to change the beneficiary so designated in said policy was reserved. While James D. Cummings was on active duty, as a member of the United States Marine Corps in 1943, Mildred E. Cummings obtained a decree of divorce. At the time said divorce was granted Mildred Cummings had possession of the policy of insurance in question. Her testimony is that James D. Cummings disposed of certain furniture and personal property accumulated during their marriage, and that he gave her possession of said policy at the time of their separation. However, she also testified that said policy was given to her the day that it was taken out, and that she has retained possession of said policy ever since. She states that no demand has ever been made upon her for the surrender of said policy. Very shortly after obtaining her divorce Mildred E. Cummings married one Mark D. Kent. Subsequent to her remarriage, and during the life time of James D. Cummings, Mildred Cummings Kent wrote a letter to a friend of James D. Cummings', one Helen Lickty, in which she stated, in part, as follows:

"Helen about the things Jimmie wanted I don't know exactly what he means about a scrap book unless it is our pictures—as you know Jimmie paid no attention to my wishes as to giveing (sic) me our things that I wanted so I have a few things that I'll send to you. When you write him tell him his promotion papers—Insurance papers, & divorce decree are in the box. He must have written his Mother once to get them but never would I give them to her so I'll send what I have to you." * * *

She explains the reference to "insurance papers," mentioned in said letter, as alluding to the Government insurance of James D. Cummings which, she contends, she assigned over to James D. Cummings at the time of their separation.

In May, 1944, when James D. Cummings was on duty in the South Pacific, as a member of the Marine Corps, he executed the following document and sent it to his father:

"29 May 1944

"Dear Dad:

"I am writing this today I should have done it a long time ago.

"This war is a dangerous business at best and while I have been Lucky so far one never knows. So I am going to give you all the dope on what you are to do in the event of my getting in the way of a well aimed slug. KEEP THIS LETTER FOR REFERENCE

"First, I have 10,000 Dollars in Insurance in the VETERANS ADMINISTRATION, WASHINGTON D. C. this names mother as my next of kin. I have a policy

with Phenoix Mutal (sic) but I think Mildred allowed that to laspe. (sic) At the time of our divorce she would not mail it to me, but sent it to a friend of ours I am having them sent to you. If this policy can be saved without the addition of a war risk clause, I will have it changed.

"Now as my next of kin mom can at my death apply for the insurence (sic) which at her age will net around 50 a month for the rest of her life and will revert to you if she should die befor (sic) you.

"Also she should apply to the Chief paymaster US MC for my back pay and the six months pay due to her as my next of kin.

"Any money or prorerty (sic) which I may have at my death are to be divided equally between you and mom.

"This letter will serve as your authority for the transfer of the money to you It has been read and my signature witnessed by a Commissionsd (sic) Officer of the Marine Crop. (sic) serving with the Armed Forcses (sic) overseas.

"As ever, love
"your son
"(s) James D. Cummings
"James D. Cummings

"I have Witnessed this signature
"J. M. Venard 2nd Leiut. (sic) U SM CR
"Corp J D Cummings
"Engr. Co. 22nd Marines (Reinf.)
"1st Prov Marine Brigade
co Fleet p.o.
"San Francisco Calif.

"P.S.—If you need any advice on what to do to get the money—see your Local Red Cross Administrator. He or she will have complete information on this."

July 24, 1944, James D. Cummings met his death "caused by wounds received in the attack at Guam Island."

After the death of James D. Cummings, Mildred Cummings Kent instituted an action in the Circuit Court of Jasper County, Missouri, to recover the proceeds of the policy of insurance here involved. Prior thereto the defendants, Elsie Mabel White Cummings and J. J. Cummings, the mother and father of James D. Cummings, made claim against the Phoenix Mutual Life Insurance Company, which issued said policy, for the proceeds thereof. The claims so filed resulted in the institution of this interpleader action and payment, by said Insurance Company, of the proceeds of said policy ($1,009) into the registry of this Court. Upon payment of such proceeds into Court the Phoenix Mutual Life Insurance Company, by interlocutory decree, was discharged from further liability under said policy.

Interpleaders Elsie Mabel White Cummings and J. J. Cummings premise their claim to the proceeds of the insurance policy in question, upon the following proposition: They contend that the document above set forth, executed by James D. Cummings, is a "soldier's will" and, as such, is a sufficient designation of them as beneficiaries of the policy of insurance in question, so as to entitle them to recover the proceeds of said policy, deposited in this action. In making that contention they assert that James D. Cummings, during his lifetime, demanded surrender of his life insurance policy, in the Phoenix Mutual Life Insurance Company, from Mildred Cummings Kent, for the purpose of changing the beneficiary therein; that Mildred Cummings Kent failed and refused to surrender said policy; that had she surrendered said policy when so demanded, James D. Cummings would have named them as beneficiaries in said policy; that he was prevented from so doing by the willful acts of Mildred Cummings Kent, which now estop her to claim that she is entitled to the proceeds of said policy. Mildred Cummings Kent contends that her designation as beneficiary in the policy of insurance in question, together with her possession of said policy under the circumstances as above stated, entitles her to receive the proceeds of said policy.

As a general proposition, in order to effect a change of beneficiary in a policy of life insurance the mode prescribed by the policy must be adhered to. Nance v. Hilliard, 8 Cir., 101 F.2d 957. The provision contained in a policy of life insurance, respecting the mode of changing a designated beneficiary, is one for the benefit of the insurance company, and may be waived. Reid v. Durboraw, 4 Cir., 272 F. 99; Dunnavant v. Mountain States

Life Ins. Co., Mo.App., 67 S.W.2d 785; Mutual Life Ins. Co. of New York v. Tuemler et al., Mo.App., 251 S.W. 727. An insurance company is held to waive such provision, so far as it is concerned, when it files a bill of interpleader and deposits the insurance money in Court, and pleads a willingness to pay the insurance fund to whichever one of rival claimants the Court may decide to be rightfully entitled thereto. Metropolitan Life Ins. Co. v. Richardson, D.C., 27 F.Supp. 791; Gnekow v. Metropolitan Life Ins. Co., Mo. App., 108 S.W.2d 621, loc. cit. 625; Frakes v. Brotherhood of Locomotive Firemen et al., Mo.App. 204 S.W. 26. Where a life insurance policy, by its terms, gives the insured the right to change the beneficiary, or assign the policy, the beneficiary, so far as the policy contract is concerned, has only a contingent interest therein. Morgan v. Penn Mutual Life Ins. Co., 8 Cir., 94 F.2d 129; Fendler v. Roy, 331 Mo. 1083, 58 S.W.2d 459, loc. cit. 464; McKinney v. Fidelity Mutual Life Ins. Co., 270 Mo. 305, 193 S.W. 564. When an insurance company waives compliance with the provision in its policy of insurance, respecting mode for change of beneficiary, and pays the proceeds thereof into Court, if it is established by convincing evidence that the insured, in said policy, manifested an unequivocal intention to change the beneficiary designated in said policy, but was prevented from carrying such intention into effect by some act of the named beneficiary, such beneficiary will be estopped from claiming the proceeds of said policy, and equity will decree to be done that, which in good conscience ought to be done, and award such proceeds to the person or persons insured intended should receive the same. Doering v. Buechler, 8 Cir., 146 F.2d 784; Prudential Ins. Co. of America v. Moore, 7 Cir., 145 F.2d 580; Frakes v. Brotherhood of Locomotive Firemen, Mo.App., 204 S.W. 26; Supreme Tent, etc. v. Altmann, 134 Mo.App. 363, 114 S.W. 1107; Mutual Life Ins. Co. of Baltimore, Md. v. Burger, Mo.App., 50 S.W.2d 765; McDonald v. McDonald, 212 Ala. 137, 102 So. 38, 36 A.L.R. 761.

In the case at bar the evidence is not convincing that James D. Cummings made a completed gift of the policy of insurance here involved to Mildred Cummings, or that said policy was delivered to her in consideration of any property settlement effected with James D. Cummings at the time of their separation or divorce. On the contrary the evidence, such as it is, leads the Court to the conclusion that at no time did Mildred Cummings Kent have a vested interest in said policy. In the letter written by Mildred Cummings Kent to Helen Lickty she exhibits knowledge that James D. Cummings had made a demand, directed to her, for the surrender of certain "insurance papers," and that such papers then in her possession were the property of James D. Cummings. Said letter also reveals that she has knowledge that it was the desire of James D. Cummings that said insurance papers be delivered to his mother. Notwithstanding that knowledge said letter shows she refused to deliver said insurance papers to the mother of James D. Cummings but retained possession thereof. She knew she was not entitled to do so for she offered to send said insurance papers to the person to whom she wrote said letter. Notice the reference to "insurance papers," in said letter is plural. Her testimony is that such reference was to the Government insurance of James D. Cummings, and that at the time of her separation from James D. Cummings she assigned his Government insurance to him. (It is here noted that under a war risk insurance policy a beneficiary has no vested interest, United States v. Johnson, D.C., 46 F.2d 549, and that the insured under such a policy has the absolute right to designate, within classes limited by the War Risk Insurance Act, 38 U.S.C.A. § 516, the beneficiary, and to change the beneficiary. Johnson v. White, 8 Cir., 39 F.2d 793.) If, in fact, such an assignment was made there is no evidence that James D. Cummings left such assigned papers with Mildred Cummings. At the time she asserts that she assigned said papers, James and Mildred Cummings were then parting ways and it is not likely that he would leave, in her possession, papers which he had her assign to him. The reasonable, normal conduct of a person under such circumstances is to

the contrary. Reference to "insurance papers," contained in the letter written by Mildred Cummings Kent, was made several months after her divorce from James D. Cummings, and after her remarriage. The policy of insurance here involved was then in her possession. Said policy shows upon its face that it was originally the property of James D. Cummings and that Mildred Cummings had no vested interest therein. The presumption is that said policy remained the property of James D. Cummings and that he retained the right to exercise all of the privileges afforded him by said policy. The admission of Mildred Cummings Kent, that at the time of writing the letter referred to she had possession of "insurance papers" belonging to James D. Cummings, is one against her interest. In light of such admission against interest, together with the presumption that surrounds the policy of insurance in question, the burden of proof is upon Mildred Cummings Kent to establish, by credible evidence, that she had some vested property right in the policy involved in this action and that she was rightfully entitled to the possession thereof as against the demand of James D. Cummings. Especially is such burden cast upon her when it is considered that the policy in dispute falls within the category of "insurance papers" which she admits, against her interest, were in her possession at the time said letter was written. Mildred Cummings Kent is a party in interest in this action and the credibility of her own testimony must be weighed in the light of such interest. If the credible evidence does not reasonably establish a vested interest in her, then it is reasonable to assume that all "insurance papers" in her possession at the time she wrote said letter (in which James D. Cummings is shown to have had an interest) were held by her adversely to the demand of James D. Cummings, and that all such "insurance papers" were rightfully his property. We do not believe that the attempted explanation of Mildred Cummings Kent, concerning the reference to "insurance papers" mentioned in said letter, meets the burden of proof cast upon her (first) because it has no legal basis and (second) it is not premised upon reason. An assignment of the Government insurance of James D. Cummings, by Mildred Cummings, was not legally necessary. If her testimony is to be accepted that she executed an assignment of such Government insurance then it is reasonable to assume such documents were also delivered to James D. Cummings. If he had her execute an assignment thereof, it is not likely that he would have permitted her to retain evidence of such Government insurance. Furthermore her testimony, concerning the delivery to her of the policy involved in this action, is contradictory. She first testified that said policy was given to her when it was first taken out; later on she testified that it was given to her at the time of separation. Reasoning from the facts here in evidence, the Court is led to the conclusion that the reference, in said letter, to "insurance papers," referred to the insurance policy of James D. Cummings with the Phoenix Mutual Life Insurance Company, and that no other policy could, in reason, have been intended; at least such reference included such policy. Such admission defeats any claim of a vested interest in said policy by Mildred Cummings Kent. So concluding it is apparent that if Mildred Cummings Kent had delivered the insurance policy in question to the mother of James D. Cummings, her designation as beneficiary therein would have been revoked. The failure of Mildred Cummings Kent to deliver said policy to the Mother of James D. Cummings prevented him from giving effect to his intention to cancel her designation as beneficiary in said policy. As a member of the armed forces of the United States, on the eve of battle, in foreign lands, James D. Cummings did all that he could possibly do to effect a change of beneficiary in said policy during his lifetime and the insurance company, which issued said policy, so recognized; hence it waived strict compliance with the provisions contained in said policy respecting the mode of effecting a change of beneficiary. That said company did so waive, Mildred Cummings Kent cannot complain for by her willful conduct she is estopped from claiming that she is the lawful beneficiary of said policy.

Having concluded that Mildred Cummings Kent should not, in equity, prevail in her claim to the proceeds of the insurance policy in question, we now consider the claims of Elsie Mabel White Cummings and J. J. Cummings. Although each of said parties filed separate claims herein, they both pray that the proceeds of said policy be paid to them jointly.

The document executed by James D. Cummings while on active duty as a member of the U. S. Marine Corps, shortly before he lost his life on the field of battle, is a soldier's will. Sec. 543, R.S. Mo.1939, R.S.Mo.1939, Mo.R.S.A.; 65 C.J. 736–739. It has not been admitted to probate. For the purpose of this action it is not essential that it be so probated. Elsie Mabel White Cummings and J. J. Cummings do not claim their right to the proceeds of the insurance policy in question, as legatees of James D. Cummings, but premise their claims on the policy of insurance proper. So far as the "soldier's will" is concerned they contend that the statements contained in said will are sufficient to show the intention of James D. Cummings and, so showing, it reveals that James D. Cummings intended they should be named beneficiaries of the policy of insurance here involved. If probate should be deemed necessary to sustain their claims, such requirement may be dispensed with as Elsie Mabel White Cummings and J. J. Cummings, being mother and father of the testator, are his sole heirs at law and the rights sought to be established by them are such as they could establish if their son had died intestate (65 C.J. 877), being possessed of a document establishing his unequivocal intention that they should be beneficiaries of his life insurance.

The statements contained in the "soldier's will" of James D. Cummings, concerning his insurance with the Phoenix Mutual Life Insurance Company, are not testamentary in character. They, however, are competent evidence of his unequivocal intention concerning such insurance. From said statements it is patent— that James D. Cummings did not intend that Mildred Cummings Kent should receive the benefits of his insurance. We think it just as conclusive that he wanted his Mother and Father to be the beneficiaries thereof. He reveals therein that he wanted to keep said insurance in force. He thought perhaps it had lapsed; that it had not is immaterial. Had his insurance policy been delivered to him, or his mother given possession thereof, it readily would have been revealed that said policy was free of a war clause and was in force. Under such circumstance his "soldier's will" shows that he would have changed the beneficiary in said policy. The statement in his will to the effect that "Any money or property which I may have at my death are to be divided equally between you and mom," though testamentary in character, is sufficient, substantial evidence, for the purpose of this action, to establish that he intended to name Elsie Mabel White Cummings and J. J. Cummings as beneficiaries in the policy of insurance in question. Pedron v. Olds, 193 Ark. 1026, 105 S.W.2d 70. The positive, unequivocal expression of his intention to change the beneficiary in said policy, together with his expressed desire as to who should be the recipients of his property, is more than persuasive that Elsie Mabel White Cummings and J. J. Cummings are his intended beneficiaries of said insurance policy.

Under the circumstances shown in evidence, James D. Cummings did all that he reasonably could have done to have his Mother and Father designated as beneficiaries in said policy. In equity and good conscience Elsie Mabel White Cummings and J. J. Cummings are entitled to the proceeds of said policy now on deposit in this Court.

It is so ordered.