### GREGG v. UNITED STATES et al.

(Circuit Court of Appeals, Seventh Circuit. October 29, 1926.)

No. 3738.

**1. Army and navy ⬿51½, New, vol. 12A Key-No. Series.**

Under War Risk Insurance Act (Comp. St. §§ 514a–514vv), amendment or change in contract of insurance might result from act of Congress enlarging or restricting class of bene-

ficiaries, even though made after death of insured.

**2. Army and navy ⬿51½, New, vol. 12A Key-No. Series.**

Designation of beneficiary, not included in class defined by War Risk Insurance Act (Comp. St. §§ 514a–514vv), might become effective, if later, and subsequent to death of insured, class of beneficiaries was enlarged to include one designated.

**3. Army and navy ⬿51½, New, vol. 12A Key-No. Series.**

Under War Risk Insurance Act, § 22, as amended by Act Dec. 24, 1919, § 4, subd. 4a (Comp. St. § 514mmm), great-aunt of insured, who had stood in loco parentis, held entitled to proceeds of policy, in view of insured's intention to designate her as beneficiary, though she was not within class specified in original act.

**4. Army and navy ⬿51½, New, vol. 12A Key-No. Series.**

Where illiterate soldier, intending to designate as beneficiary great-aunt, who had stood in loco parentis to him, advised with company clerk, relief may be had because of mutual mistake, believing she could not be made beneficiary, and making insurance payable to estate.

**5. Army and navy ⬿51½, New, vol. 12A Key-No. Series.**

Evidence held to establish soldier's war risk insurance was for benefit of great-aunt, who had stood in loco parentis to him, entitling her, as against immediate relatives, to benefits after amendment by Act Dec. 24, 1919, § 4, subd. 4a to War Risk Insurance Act, § 22 (Comp. St. § 514mmm), made her eligible as beneficiary.

Appeal from the District Court of the United States for the District of Indiana.

Suit by Melvina Gregg against the United States and others. Decree for defendants, and plaintiff appeals. Reversed, with directions.

Raymond L. Walker, of Chicago, Ill., for appellant.

Clarence W. Nichols, of Indianapolis, Ind., for appellee Shelton and others.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

EVAN A. EVANS, Circuit Judge. Appellant, by this suit, seeks to recover upon a war risk insurance policy for the sum of $10,000, covering the life of Joseph Rastus Gregg, who was killed in action. The United States of America, one of the appellees, admits liability and stands ready to pay the sums due, according to the terms of the policy, to such person or persons as the court shall direct. Appellees, other than the United States, are adverse claimants, who collected upon the policy until this suit was brought. They are the mother and half

brothers and sister of the deceased soldier, whom the District Court found to be the legal beneficiaries.

The facts are few and hardly in dispute. The assured was born out of wedlock, and lived with appellant, a great-aunt by marriage, from the time he was 18 months old until his death, save for the short period he was in the war service. His mother, one of the appellees, married when the assured was 4 or five years old, but her duties doubtless prevented her from ever taking her child, who, a little later, went with "Grandma Gregg," as appellant was called, into Indiana, where he remained until he was 17 or 18 years old, and from which place he enlisted. During the years he resided in Indiana, he never saw nor heard of his mother. Appellant, during all these years, stood in loco parentis to the assured.

Deceased was almost illiterate and was somewhat subnormal mentally. Appellant was also illiterate. It is fairly inferable that the deceased did not know his mother was alive; certainly he did not know her name or her residence; and he, of course, did not know of the existence of his half brothers and sister. He never carried any name other than Gregg, taken from or given by "Grandma" Gregg, appellant herein.

The testimony concerning the application for insurance came from the officers of his company, who had reason to recall the circumstances surrounding the execution of the application and the issuance of the policy. When deceased was asked who the beneficiary should be, he replied, "Grandma Gregg." Assured was told that the law required him to name his parents, and, if he did not have parents, or did not care to name them, he should name his estate. The "company clerk" labored under the impression that appellant was the heir at law of the assured, and told the assured he would mail the policy to her (which was done), and she "would be the one to receive the insurance, if anything should occur."

Solution of the questions here presented calls for a consideration of the general purpose and object of this war-time legislation. The government was exercising its extraordinary war power, and recruiting soldiers through the draft system. It was not only anxious to care for dependents, but insisted that they should be protected so far as possible. Insurance was made well nigh compulsory. The duration of the war, however, was unknown, and the extent of the human loss uncertain. The Congress, therefore, limited its obligation to those who were or who might be dependent upon the soldier. It also provided that its liability be a somewhat varying one, for it reserved the right to amend the act which created and fixed its liability. In these respects the insurance contracts under consideration differed from the ordinary life insurance contracts. While the United States acted as the insurer, it was at the same time occupying the position of a guardian toward the insured and the beneficiary—doubly so in the instant case where the ward was only 17 years old, illiterate, and somewhat subnormal.

The act originally provided that the only beneficiaries that could be designated were "the spouse, child, grandchild, parent, brother or sister." If the soldier had no such relative, then the liability of the government was expressly limited. Compiled Stats. § 514uuu. The injustice and the shortsightedness of this limitation was early recognized, and on December 24, 1919, Congress enlarged the list of those who might be named as beneficiary. Section 4 (4a) of the amendment (Comp. St. § 514mmm) provides:

"The terms 'father' and 'mother' include stepfathers and stepmothers, fathers and mothers through adoption, and persons who have stood in loco parentis to a member of the military or naval forces at any time prior to his enlistment or induction for a period of not less than one year: Provided, that this subdivision shall be deemed to be in effect as of October 6, 1917."

Appellant came within the class designated by the amendment of 1919, though she was not included in the class as the act was originally drawn. The War Risk Insurance Act (Comp. St. §§ 514a–514vv), however, provided that the terms and provisions of all contracts of insurance should be subject in all respects to the provisions of the act *or any amendments thereto*, and also subject to all regulations thereunder now in force or hereafter adopted, all of which, together with the application for insurance and the terms and conditions published under authority of the act, should constitute the contract. [1] And it follows inevitably, it seems to us, that inasmuch as the right to amend or change the contract (including the beneficiary) existed at all times, this change might result through an act of Congress which enlarged or restricted the class of beneficiaries, and this enlargement of the beneficiary class might be made after the death of the insured. The reserved right to amend the act—a part of the contract—left the beneficiary with no vested rights under the insurance contract. [2] In other words, insured may have

named one as beneficiary who was not included in the class defined by the act, and yet such designation might become effective if, later and subsequent to the death of the assured, Congress enlarged the class of beneficiaries so as to include the one designated by the insured. Helmholz v. Horst (C. C. A.) 294 F. 417; Salzer v. U. S. (C. C. A.) 300 F. 767; White v. United States (D. C.) 299 F. 855; United States v. Law (C. C. A.) 299 F. 61; Gilman v. United States (C. C. A.) 294 F. 422; Meisner v. United States (D. C.) 295 F. 866.

[3] Applying this statement of the law to the facts in the present case, we have no hesitancy in finding that the deceased designated appellant as the beneficiary to whom the insurance should be paid in case of his death. The company clerk sent the policy, when it was received, to appellant. This was done at the request of assured. This was a designation, or evidence of a designation, by act, if not by words; and such evidence, accompanied by possession of the policy, would under some holdings give appellant an interest in the policy. Hogue v. Minnesota Packing Co., 59 Minn. 39, 60 N. W. 812; Travelers' Ins. Co. v. Grant, 54 N. J. Eq. 208, 33 A. 1060; McGlynn v. Curry, 82 App. Div. 431, 81 N. Y. S. 855.

[4] Appellant's name was not inserted in the policy, however, due to a mutual mistake of law, made by the assured and the clerk of the company who took his application, and this mistake of law was founded upon a mistake of fact. Neither of these parties knew of the existence of a parent, or brothers, or sister. Both of them labored under the impression that appellant was the heir at law. As advised by the company's clerk (upon whose advice deceased lawfully relied), deceased believed he was designating in writing the appellant as beneficiary. The fact that the written designation did not accurately or properly express his oral designation should not affect the case in the least; for the assured's illiteracy and minority, as well as his reliance upon the advice of one who stood in a position similar to that of guardian, should avoid the consequences of his mistake.

[5] The evidence overwhelmingly establishes the fact that the insured and the United States entered into an insurance contract for the benefit of the insured, and in case of his death for the benefit of appellant herein. Certainly the minds of the parties never met on any other agreement. The effect of this agreement was temporarily defeated by the limitations of the statute naming the beneficiaries who could benefit under the insur-

ance policy, but this limitation was legally overcome through the amendment of 1919.

We conclude that appellant was designated as the beneficiary; that under the amended act heretofore quoted her ineligibility to act as a beneficiary was removed, and from that date she was entitled to receive the various sums named in the policy. Payments heretofore made by the United States government were made in good faith, and the stipulation of the parties makes it unnecessary for us to consider their repayment.

The decree is reversed, with instructions to enter one in accordance with the views herein expressed.