## TUDOR v. UNITED STATES (WILSON, Intervener).

District Court, W. D. Washington, N. D. November 8, 1929.

No. 20002.

Lester Pope, Sp. Counsel U. S. Veterans Bureau, of Seattle, Wash., for defendant.

James M. Hay, of Seattle, Wash., for intervener.

BOURQUIN, District Judge (after stating the facts as above). ▮ As originally enacted and when the policy issued, the War Risk Insurance Act (section 402, 40 Stat. 409) limited beneficiaries to the insured and his spouse, child, grandchild, parent, brother, or sister, and defined (section 22) "parent" to include father, mother, grandfather, grandmother, stepfather, and stepmother. Act March 4, 1925 (43 Stat. 1308, § 12 [38 USCA § 511]) re-enacted section 402 aforesaid, but added uncle, aunt, nephew, niece, brother-in-law, and sister-in-law. Act June 7, 1924, 43 Stat. 607, § 3 (38 USCA § 424), provides that where used in the Act, "unless the context otherwise requires (paragraph 4 [38 USCA § 424, par. 4]), the term 'parent' includes a father, mother, grandfather, grandmother, father through adoption, mother through adoption, stepfather, and stepmother," and that (paragraph 5 [38 USCA § 424, par. 5]) "the terms 'father' and 'mother' include stepfathers and stepmothers, fathers and mothers through adoption, and persons who have stood in loco parentis to a member of the military or naval forces at any time prior to his enlistment or induction for a period of not less than one year."

Examination of all the various amendments and re-enactments of the War Risk Insurance Act discloses that, in the parts thereof devoted to various gratuities, the terms "father" and "mother" are generally used, the term "parent" as a sometime synonym by "the context" required; but in the part devoted to insurance the term "parent" is exclusively used. It would seem, therefore, that the beneficiaries of insurance do not include a person in loco parentis. They are excluded from the insurance, but admitted to the gratuities. Why Congress thus discriminated is not apparent, no more than why it excluded grandparents from the gratuities, but admitted them to the insurance. Nor is it material. The will of Congress controls, and to ascertain it every word must be given effect, every term must be given the meaning by Congress prescribed. When in repeated enactments it defined "parent" exclusive of persons in loco parentis, "father" and "mother" inclusive of them, and then limited insurance beneficiaries to "parent," its intent is clear; and it and settled principles of construction would be violated did the court do what Congress did not, viz., extend "parent" to include persons in loco parentis.

Clarence Anderson, of Seattle, Wash., for plaintiff.

■ Moreover, during all the time the plaintiff is alleged to have been in loco parentis to insured, the latter had attained his majority, was an adult mentally and physically competent to provide for himself. In such circumstances the relationship has no legal sanction. It was so held in Howard v. U. S. (D. C.) 2 F.(2d) 170, the reasoning of which is believed to be sound in principle.

That a close and affectionate status existed between plaintiff and insured for more than one year prior to the latter's induction into service, that insured characterized plaintiff as father and desired him as beneficiary at least when the policy issued, is manifest. But that is not enough. In addition to this affection, label, and desire, must be legal competency and performance of attendant obligations, in respect to both of which the proof fails.

At the trial plaintiff testified altogether generally to receiving insured ill in 1916 and providing him with a home until induction into service; that he supported insured, paid his doctor's bill and all other bills; that insured collected moneys due plaintiff of which the latter received little; and that he buried insured and paid part of the expense. But in all this he has no material corroboration where ample corroboration, if true, must be available. On the other hand, Mrs. Gardner testified that insured was not sick, worked all the time, paid his rent and board. And that insured was industrious and earned money ample for all his reasonable needs appears by his own affidavit for compensation and some corroborated by the testimony of Mr. and Mrs. Pitter.

In striking contrast to plaintiff's general testimony at trial is his affidavit aforesaid claiming the insurance. In that, he deals with particulars, and avers he provided home and specific moneys in support of insured from 1911, whereas at trial he says from 1916.

Since in 1911 insured was two years under majority, and both he and plaintiff competent to enter into the relation claimed, within the rule of Howard's Case, supra, which case was in print two years before plaintiff made the affidavit aforesaid, it is highly probable that in the latter plaintiff falsely averred the inception of the relation in 1911 to escape the effect of said case. To make out a case, false allegations in ex parte affidavits may be ventured before a bureau, but not in adversary proceedings in court.

Unexplainable and unexplained, his falsity then discredits him now. That in behalf of insured he assumed and discharged a father's duties of care and support to a son is not proven.

Accordingly, the intervener is entitled to judgment.