## NIEWIADOMSKI v. UNITED STATES.
### No. 10322.

Circuit Court of Appeals, Sixth Circuit.
Feb. 7, 1947.

Francis L. Williams, of Grand Rapids, Mich. (Francis L. Williams and William S. Wison, both of Grand Rapids, Mich., on the brief), for appellant.

Fendall Marbury, of Washington, D.C. (Jos. F. Deeb, of Grand Rapids, Mich., and John F. Sonnett, Searcy L. Johnson, D. Vance Swann, and Fendall Marbury, all of Washington D.C., on the brief), for appellee.

Before HICKS, SIMONS and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The plaintiff-appellant, Rebecca Niewiadomski, appeals from a judgment of the District Court dismissing her action against The United States of America, defendant-appellee herein, in which she, as named beneficiary, attempted to recover on a policy of life insurance issued under the National Service Life Insurance Act of 1940 on the life of Wayne S. Andrews. The case was tried before the District Judge without a jury. The question presented is whether the appellant stood "in loco parentis" to the insured, which relationship would have authorized a recovery. The Court held that the relationship did not exist.

Wayne S. Andrews, the insured, was a full blooded Indian, born June 4, 1906. He entered the armed forces of the United States as a soldier on March 24, 1942. While in such military service, and on March 25, 1942, he applied for and was granted effective April 1, 1942 a National Service Life Insurance contract in the principal sum of $3,000. Premiums thereon were paid by deductions from his military service pay up to and including the month of June 1944. He died while in the service on June 25, 1944. In his application for the insurance the insured designated the appellant, who was his first cousin, as the beneficiary, whose relationship to him was described as "loco parentis." The appellant was four months and four days older than the insured. In naming her as such beneficiary and as standing in loco parentis to him the insured acted in good faith and no fraud or concealment of any kind is shown.

Both of the parents of the insured died when he was a young child and he lived with his uncle until he was 26 years of age. He never married. Following the death of his uncle in 1932, he went to the home of the appellant and her husband in Grand Rapids, Michigan. He was without money, without clothes, without a place to live in, and had no employment. The appellant and her husband took him into their home, gave him clothes and food and treated him as a member of the family. He had completed eight years of elementary school, but was not skilled in any trade and was only able to obtain work as a common laborer. He secured employment after about two weeks. He used his wages for his first two weeks' work for his own needs, and then beginning about four weeks after coming to appellant's home he started paying board to her at the rate of $5 per week, and continued to do so throughout the time that he lived in her home. He continued to make his home in the home of the appellant and her husband until his entry into the armed forces, with the exception of about four different periods, of several weeks each, when he left and lived elsewhere, but leaving his clothes at appellant's home. While living with appellant he was able to and earned his living as a common laborer, earning an average of approximately $20 per week, when working. He was not able to obtain steady employment on account of the depression. He collected his wages, retained them as his own, and handled his own finances.

The insured at times performed household chores, such as cutting the grass, removing snow from the walks, chopping wood and bringing in coal, without asking or receiving any pay therefor. He also assisted appellant's husband in repairing the roof of the house. He ate with the family and had the run of the home. He shared a room with one of appellant's sons. He took appellant's children to amusement places and occasionally brought them presents. He exchanged gifts at Christmas time with members of the family. He usually accompanied appellant and her family on fishing and pleasure trips. The appellant washed and mended his clothes without extra compensation. He occasionally gave gifts to the appellant, such as a pair of stockings or a house dress. He

drank to excess, getting drunk practically every Saturday night. Resulting friction with appellant's husband would cause him to temporarily leave appellant's home. He called the appellant "sister" most of the time. She usually called him by his first name and some times "brother." The appellant testified that she always considered the insured as her brother, and not as a son. The rest of the family called him "Uncle Wayne." The appellant and her husband paid the insured's funeral expenses amounting to $243.45, and expenses incident to his last illness amounting to $9.

At the time of the issuance of the contract of insurance and at the time of his death, the insured had no actual widow, child, parent, brother or sister. All premiums required to be paid by the terms of the contract were duly paid from April 1942 through June 1944. The defendant has retained these premiums and has never tendered return thereof to the administratrix of the insured's estate, duly appointed by the Probate Court of Kent County, Michigan, on August 24, 1944. Such premiums were not tendered into court during these proceedings. Claim for insurance benefits under the policy was filed with the United States Veterans Administration on August 22, 1944 and was denied on February 14, 1945. The complaint stated that a disagreement existed between the plaintiff and the Veterans Administration as to the payment of the insurance according to the terms of the contract.

The insurance contract in question was issued under the provisions of the National Service Life Insurance Act, enacted October 8, 1940, Sections 801–818, Title 38 U.S. C.A.

Section 602(g) of the Act, Section 802 (g), Title 38 U.S.C.A., provided as follows: "The insurance shall be payable only to a widow, widower, child (including a stepchild or an illegitimate child if designated as beneficiary by the insured), parent, (including person in loco parentis if designated as beneficiary by the insured), brother or sister of the insured. The insured shall have the right to designate the beneficiary or beneficiaries of the insurance, but only within the classes here-in provided, and shall, subject to regulations, at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries but only within the classes herein provided."

The above section was amended on July 11, 1942 by striking out the words included in the parenthesis following the word "parent," and by adding to Section 601 of the Act Section 601(f), reading as follows: "The terms 'parent', 'father', and 'mother' include a father, mother, father through adoption, mother through adoption, persons who have stood in loco parentis to a member of the military or naval forces at any time prior to entry into active service for a period of not less than one year."

Appellant relies chiefly upon the ruling in Zazove v. United States, 7 Cir., 156 F.2d 24. In that case the Court held that the fact that the insured was an adult did not prevent the beneficiary from standing in loco parentis to him; that the statute should be liberally construed in favor of the insured in order to carry out his intentions; that Congress used the words "in loco parentis" as descriptive words rather than in the generally accepted limited common law sense; and under the particular facts in that case the beneficiary was entitled to recover, reversing the judgment of the District Court to the contrary. In two recent district court decisions the named beneficiary was also held to occupy the status of "in loco parentis" and allowed to recover. Horsman v. United States, D.C.W.D.Mo., 68 F. Supp. 522; Baldwin v. United States, D.C. W.D.Mo., 68 F.Supp. 657. The facts in those two cases are much stronger than the facts in the present case and do not involve the same questions presented by this case. There are also several district court opinions arising under similar provisions of the War Risk Insurance Act of World War 1. In Meisner v. United States, D.C.W.D.Mo., 295 F. 866, the Court held that the fact that the insured was an adult did not prevent the beneficiary from standing in loco parentis to him and recovering under the policy. In that case the insured admittedly was regarded as a son of the family and the only real question presented was the one raised

686

by the fact that he was an adult. In Howard v. United States, D.C.E.D.Ky., 2 F.2d 170, the insured was also an adult. The Court considered the question carefully and at length and ruled that one could not stand in loco parentis to an adult. In Tudor v. United States, D.C.W.D.Wash., 36 F.2d 386, the Court in a ruling which was not necessary to the decision of the case held that one could not stand in loco parentis to an adult who was mentally and physically competent to provide for himself. These cases accordingly embody rulings on one of the questions presented in the case at bar, namely, whether or not the relationship of in loco parentis can exist when the insured is not a minor. The present case might possibly turn on that issue. However, in view of our conclusions with regard to the broader aspects of the case we make no ruling on that issue, and pass to a discussion of whether or not under the particular facts in this case the appellant actually stood in the relationship of in loco parentis to the insured, irrespective of the fact that he was an adult.

 The term "in loco parentis," according to its generally accepted common law meaning, refers to a person who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation without going through the formalities necessary to legal adoption. It embodies the two ideas of assuming the parental status and discharging the parental duties. The opinions in both Meisner v. United States, supra, and Howard v. United States, supra, accept this view and approve such a definition. It clearly embodies more than furnishing material help to a close relative who is in need. One may be willing to furnish needed assistance to such a relative, even over an indefinite period of time, without being willing at the same time to assume the legal obligation of a parent. Due to the obligations and rights that arise out of such a relationship, the assumption of the relationship does not arise by chance, but is the result of intention. Both Meisner v. United States, supra, 295 F. at page 868, and Howard v. United States, supra, 2 F.2d at page 175, recognize the necessity of that basic element. See also Miller v. United States, 8 Cir., 123 F.2d 715, 717. At common law a parent is charged with the duty of educating and supporting a minor child, and with a continuing obligation thereafter in certain cases of physical or mental disability. A parent has the right to the custody and control of a minor child together with the authority to take such disciplinary measures as are reasonably necessary to discharge the parental duty. A parent who is providing a home for his minor son and supporting him is entitled to his services and earnings. The same rights and duties exist when the relationship of in loco parentis has been intentionally assumed and established. The relationship is essentially different from the relationship of brother and sister, or the relationship of cousins, which relationships do not include the legal obligations existing between parent and child. Viewing the facts in the present case in the light of these well established principles, it would seem clear that the appellant had no intention of assuming the relationship of a parent to the insured. Her purpose was to aid and assist rather than to assume any parental obligations or exercise such parental control as continues to exist in the case of an adult child continuing to live in the parent's home. Both the age of the insured and the age of the appellant are important factors in the situation, although neither factor need be considered a conclusive one. His self support and independence of action are also important factors. The most conclusive factor in the case is the appellant's own testimony that she considered the insured as a brother, and not as a child. We fully recognize the kindness and generosity which, to a large degree, was extended by the appellant and her husband to the insured, but as indicated above, kindness and generosity, even on the part of near relatives, are not the same as assuming the common law relationship of in loco parentis.

 The facts in Zazove v. United States, supra, are not reported in detail. The Court concerned itself largely with ruling that the relationship of in loco parentis was possible even in the case of an

adult and that the words were used by Congress as descriptive words rather than in the common law sense above indicated. Under that construction of the Act, the details of the relationship were unnecessary. The facts may have been stronger than are the facts in our case and sufficient to support the ruling in the absence of such a construction. We do not agree with the construction that the words are descriptive rather than legalistic. The Act is not loosely drawn with respect to the specific persons entitled to be beneficiaries. On the contrary, it goes into detail and enlarges the scope of permitted beneficiaries, where the common law meaning of the word used would be restrictive. It provides that the term "child" includes an adopted child, and also that the term includes either a stepchild or an illegitimate child if designated as a beneficiary by the insured. The terms "father" and "mother" are broadened by defining them as including a father or mother through adoption. The term "parent" is also broadened by defining it as a person who has stood in loco parentis to a member of the military or naval forces for a period of not less than one year. Since Congress did not by the terms of the Act enlarge on the generally accepted common law meaning of the term "in loco parentis," as it did in the case of children and parents, we believe that Congress intended the term to be construed in its usually accepted common law sense and with regard to the limitations which the common law has consistently for a long period of time attached to it. Such is the well established rule of statutory construction. Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 115, 60 S.Ct. 1, 84 L.Ed. 110; McNally v. Hill, 293 U.S. 131, 136, 55 S.Ct. 24, 79 L.Ed. 238; Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 59, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas. 1912D, 734; Keck v. United States, 172 U.S. 434, 446, 19 S.Ct. 254, 43 L.Ed. 505; Seven Cases v. United States, 293 U.S. 510, 517, 36 S.Ct. 190, 60 L.Ed. 411, L.R.A. 1916D, 164.

The opinion in Zazove v. United States also relies upon an amendment to Section 602(g) of the Act, passed August 1, 1946 as indicating the intention of Congress that a legalistic construction of the phrase was never intended. The amendment referred to provided that the provisions of the subsection as to the restricted permitted class of beneficiaries shall not apply to any national service life-insurance policy maturing on or after August 1, 1946. However, we construe this as a change of policy on the part of Congress in a move to enlarge the class of beneficiaries, rather than an attempt to avoid the limited legal construction of the phrase. The amendment was specifically limited to policies maturing on or after August 1, 1946. The liberalizing effect of the amendment could have been made applicable to all policies previously issued. Helmholtz v. Horst, 6 Cir., 294 F. 417; Gilman Heirs v. United States, D.C. 290 F. 614, affirmed 3 Cir., 294 F. 422; Gregg v. United States, 7 Cir., 15 F.2d 8. But Congress did not elect to do so. The time limitation adopted by the amendment indicates a specific intent on the part of Congress to broaden the terms of the Act only with respect to the future, and to retain the limited provisions pertaining to beneficiaries with respect to policies previously maturing but which have not been fully paid, even though the installment payments thereunder may extend well past August 1, 1946.

The appellant's final contention is that the United States is estopped under the facts and circumstances of this case from denying that the appellant stood in loco parentis toward the insured. She relies particularly upon the long period which elapsed after issuance of the insurance contract without the insured being advised that the designated beneficiary was not a permitted one, the fact that the insured acted in good faith and with no intent to defraud, and the fact that the United States has collected and retained all of the premiums due and payable under the contract. No authority is cited or found to support the claim that the Administrator of Veteran Affairs owed any duty to the insured to verify the fact that the relationship of the beneficiary was actually as claimed by the insured. The certificate of insurance provides on its face that it is granted "under the authority of the National Service Life Insurance Act of 1940, and subject in all respects to the provi-

688

sions of such Act, of any amendments thereto, and of all regulations thereunder, now in force or hereafter adopted. * *" The Act limited to specific relationships those who were eligible as beneficiaries. It is not enough that the insured acted in good faith. In order to create estoppel it is necessary that misrepresentation be made by the party sought to be estopped. It is not shown that any officer or agent of the United States misrepresented any fact to the insured. He knew the facts; they didn't. In any event, it appears well settled that in matters of this kind the United States is neither bound nor estopped by the acts of its officers and agents in entering into an agreement to do what the law does not permit. Government officers may not waive the provisions of the National Service Life Insurance Act. Wilber National Bank of Oneonta, New York v. United States, 294 U.S. 120, 123, 55 S.Ct. 362, 79 L.Ed. 798; Coleman v. United States, 6 Cir., 100 F.2d 903, 905; United States v. Valndza, 6 Cir., 81 F.2d 615, 617.

The judgment of the District Court is accordingly affirmed.