TERRY KANE ET AL., Plaintiffs and Appellees, *v.* REPUBLIC OF CUBA ET AL., Defendants; V/O PRODINTORG, Intervener and Appellant.

No. R-63-158.      Decided May 18, 1964.

420

*Nachman & Feldstein* for appellant. *Isaías Rodríguez Moreno* and *Elmer Toro Lucchetti* for appellees.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

On July 26, 1961, Terry Kane and two other American citizens residents in the State of Florida obtained judgment for $833,978.12 in a court of that state against the National Institute of Agrarian Reform of the Republic of Cuba and the Government of that Republic as "parent authority" of that Institute.

In the middle of September 1962 the English ship "Streatham Hill" of Arcadia Overseas Freighters, Ltd., sailed from the port of Santiago de Cuba with a cargo of 79,595 sacks of sugar, bound for a port of the Soviet Union on the Black Sea. Walter C. Whitting was its master.

On the shipping date or dates Capt. Whitting issued on that cargo two bills of lading to the order of "V/O Prodintorg," an agency of the Soviet Union.

Shortly after starting on its voyage the "Streatham Hill" suffered damages, and in order to repair them it made a forced arrival in the port of San Juan where it had to unload 14,135 sacks of sugar which were stored in the Isla Grande pier operated by the Puerto Rico Port Authority. By September 19, 1962, the repairs were nearing completion.

At 4 p.m. of that day, September 19, 1962, Terry Kane, H. A. Kane and Louis Kane, owners of the credit for $833,-978.12, legally established by the aforesaid judgment, brought an action for recovery thereof in the Superior Court, San Juan Part. They joined as parties defendant: "Republic of Cuba and/or National Institute of Agragian Reform and Cuba Aeropostal Agency, Inc., and/or Cuba Aeropostal, S.A." They alleged in their complaint, among other things,

that "Said judgment . . . is final and unappealable and has not been nor can be executed in the State of Florida," and ". . . can be executed in Puerto Rico, since certain property owned by defendants consisting of a cargo of 80,000 sacks of sugar, with an approximate value of of $400,000, is found at present within the jurisdiction of Puerto Rico." In order to secure the effectiveness of the judgment, they moved and obtained on that date, without giving bond, a writ of attachment whereby the following day 14,135 sacks of sugar which had been unloaded and stored in Isla Grande pier by reason of the repairs of the damages were actually attached.

Whitting, as master of the ship and representative of Arcadia Overseas Freighters, Ltd., moved for leave to intervene in the action for the purpose of recovering the possession of the sugar attached, alleging the reasons why the attachment was null and void. Julio Lobo moved for leave to intervene alleging that "the sugar attached" belonged to him. The Port Authority also moved to intervene three months after the attachment in order that the sugar attached be removed from its pier, and claimed $43,253.10 due it "by way of default charges of the storage of the sugar." Hearings were held on those motions to intervene. The trial court denied all of them. No action was taken from such denials.

On November 8, 1962, the Soviet agency V/O Prodintorg moved to intervene in the action. In its "Motion for Intervention" it alleged that it was the owner of the 14,135 sacks of sugar attached and that the "writ of attachment" issued therein was null and void for the reasons therein stated.

A hearing was held on the propriety of the motion to intervene. On November 28 the trial court entered an order denying the same. At the request of V/O Prodintorg, on January 24, 1963 we issued a writ of certiorari to review the same.

By May 21, 1963—the petition for certiorari in the main action on execution of judgment being still pending—none of

defendants had appeared in the action notwithstanding they had been summoned by publication. There was not, therefore, an answer to the complaint nor any motion for summary judgment. On that date plaintiffs filed a "motion" which in its pertinent part reads:

"1. Plaintiffs have learned through an attorney in the State of Florida and through the press of that state that the judgment obtained by plaintiffs against the Republic of Cuba in the State of Florida, in the case to which reference is made in the complaint in this case, has been reversed by an appellate court of the state.

"2. Defendants have not filed an answer in this case.

"3. In view of the foregoing, plaintiffs hereby inform the Hon. Court that they desist from this action under Rule 39.1 (a) (1) of the Rules of Civil Procedure—San Juan, Puerto Rico, May 21, 1963."

The following day the trial court entered an order dismissing the action and quashing the attachment levied in the case for all legal purposes.

On the same day plaintiffs, as interveners in petition for certiorari C-62-101, filed in this Court a "Motion of Dismissal," stating in part that:

". . . hereby inform this Hon. Supreme Court that they have abandoned their action before the Superior Court of Puerto Rico under Rule 39.1 of the Rules of Civil Procedure, further consenting to the cancellation or discharge of the attachment levied in that action."

Later they submitted a copy of the said order of respondent court to dismiss and release the attachment levied on 14,135 sacks of sugar.

V/O Prodintorg appeared in petition for certiorari C-62-101 and filed an "Opposition to Dismissal of the Case in the Superior Court." It alleged, among other grounds of opposition to the dismissal, (1) that it was not timely served with the notice of dismissal, (2) that the order of dismissal was

entered without holding a hearing, and (3) that the same should not have been entered since petition for certiorari C-62-101, to review the denial of intervention, was pending before this Court.

On June 10, 1963, we entered the following order in that petition for certiorari:

"The trial court having entered an order whereby plaintiffs are considered to have abandoned their action, wherefore the present petition for certiorari is academic, dismissal thereof is hereby ordered."

In an elaborate and reasoned motion V/O Prodintorg moved this Court to reconsider that order. On June 26 we declined to do so.

Ten days after our order declaring that the petition for certiorari was academic, V/O Prodintorg filed the petition which we now consider. For the second time, perhaps the third, it urges this Court to set aside the order of dismissal, by reason of voluntary dismissal, entered by the trial court in the main action. The grounds of this new motion to set aside that order of dismissal had been considered within the first petition for certiorari C-62-101.

In its brief V/O Prodintorg assumes and defends substantially the same position which it assumed in the petition for certiorari respecting the order of dismissal of the main action entered by the Superior Court. All the averments of V/O Prodintorg in that petition for certiorari were "adopted by reference" in the present petition.

We have reached the conclusion that the order of dismissal of the main action should be affirmed. We shall state our reasons.

In order to facilitate the termination of judicial controversies, our Rules of Civil Procedure of 1958 provide expeditious and very simple procedural mechanics: the mere filing

in court of a notice of dismissal. Rule 39.1 (a) (1) in its pertinent part provides:

"39.1. *Dismissal*

"(a) *By plaintiff* . . . . Subject to the provisions of Rule 20.2, an action may be dismissed by the plaintiff without order of court (1) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment."

■ Having complied with the requirements that the action is not a class action—within the meaning or scope of that type of litigation mentioned in Rule 20.2—and that the withdrawal is exercised before service of a motion for summary judgment or of the answer, the right of a plaintiff to abandon the prosecution of his action at any time, unilaterally and of his own volition, without previous notice, without an order or resolution of the trial court accepting his dismissal, and without prejudice, is absolute. For the withdrawing plaintiff, it actually constitutes a procedural privilege immune to the imposition of terms and conditions, unless he imposes them upon himself in his own notice. It operates to terminate forthwith the litigation initiated by him; however, the cause of action or claim made is not extinguished; he can make further claim. Things return to the material state of law at the commencement of the action. It is completely effective upon the filing in court of the notice of dismissal; every order or resolution of dismissal is superfluous.[1]

■ Where dismissal is sought after service of the answer or of the motion for summary judgment, that privileged situation disappears. In that case, according to Rule 39.1 (b), it must be made by motion served on all the other parties and after holding a hearing, by order or resolution of the court

---

[1] *Rivera* v. *Meléndez*, 70 P.R.R. 732 (1950); *De Jesús* v. *Freyre*, 68 P.R.R. 868 (1948). 5 Moore, Federal Practice 1007–17, 2d ed.; 2B Barron and Holtzoff, Federal Practice and Procedure 102–10; *Wilson & Co.* v. *Fremont Cake & Meal Co.*, 83 F.Supp. 900, 903 (1949).

and upon the terms and conditions which the latter may deem proper, if the dismissal is accepted.[2]

■ If a motion for intervention amounting substantially to an answer posing a worthy and justiciable issue which may or should be submitted to the court for action thereon has been duly and timely filed in the case, and if the substantial rights of the persons seeking intervention are actually, seriously and directly prejudiced by the effects of the dismissal, in that case, in the light of cardinal Rule 1, plaintiff should withdraw his action as provided by 39.1(b), and the acceptance or overruling thereof shall rest on the sound discretion of the court. See *Butler* v. *Denton,* 159 F.2d 687, 689 (10th Cir. 1945), the only case commented on by Moore and Barron and Holtzoff. It is cited by appellant.

In view of the possibility that a situation similar to that in the preceding paragraph may have come before us, and notwithstanding our order declaring academic the said petition for certiorari 62-101, we agreed in the present case to review the order of voluntary dismissal.

Both in the petition and in its motion for intervention of November 8, 1962, only V/O Prodintorg raised before respondent court the nullity of the attachment. As to the merits thereof, in the order refusing intervention it was stated, among other things: ". . . the court is satisfied that . . . that 'Motion for Intervention' is based on facts and averments which apparently are sufficient to grant the same." However, because of the immediate effect of the voluntary dismissal—which occurred several months later—and also by virtue of the order of the court, the same attachment which for various reasons V/O Prodintorg sought to discharge was completely dissolved and discharged "for all legal purposes."

---

[2] See *Vergne* v. *Rodríguez,* 77 P.R.R. 116, 123 (1954); *Zegarra* v. *District Court,* 66 P.R.R. 143, 147 (1946).

In the "Motion of Dismissal" which Terry Kane *et al.*, as interveners, filed in petition for certiorari C-62-101 and of which they served notice by mail upon the attorneys for V/O Prodintorg, petitioner therein, the day they filed in the trial court their "Motion of Dismissal"[3] they stated in its pertinent part:

". . . hereby inform this Hon. Supreme Court that they have dismissed their action before the Superior Court of Puerto Rico, pursuant to Rule 39.1 of the Rules of Civil Procedure, further consenting to the cancellation or annulment of the attachment levied in that action."

Notwithstanding the opposition to the dismissal and to the order made by V/O Prodintorg before this Court, we ordered the dismissal of certiorari 62-101 on the ground that it had become academic by reason of the voluntary dismissal. No practical purpose would be accomplished by authorizing intervention the sole purpose of which was to seek a declaration of nullity of an attachment which was already dissolved and cancelled; in other words, at that time nonexistent.

In thus giving effectiveness to the voluntary dismissal and to the subsequent order of dismissal of the attachment challenged, we impliedly considered the former well done and the latter correctly entered, even though superfluous, and thus both actions became final. As corollary, the rationale or cause of action on which the motion for intervention of V/O Prodintorg was predicated was extinguished.[4]

---

[3] As a result, the attorneys for V/O Prodintorg received, though indirectly, prompt notice of the filing of the motion.

[4] According to the statements made during the hearing of this petition by one of the attorneys for V/O Prodintorg and to certain statements made in his brief, in August 1963, or two months after filing this petition, V/O Prodintorg filed, under No. 303-63 in the United States District Court for Puerto Rico, a complaint against the Puerto Rico Port Authority in which, after alleging that it was the owner of 14,135 sacks of sugar and that the latter were under the control of the Superior Court, San Juan

There is hardly any merit in the contention of lack of jurisdiction of the trial court to order the dismissal of the main action while certiorari 62-101 was still pending against the order refusing intervention to V/O Prodintorg.

■ The right of a person to desist from and abandon voluntarily the prosecution of a judicial controversy which he initiated should be as old and respectable as the right to bring it. As in the federal and state jurisdictions, in Puerto Rico, for more than 60 years, the right to voluntary dismissal—although at first it was conditioned here upon the payment of costs, § 192 of the Code of Civil Procedure—has been maintained and encouraged as a vital policy of the civil procedure. As a means to maintain social and individual peace, its usefulness is evident.

It cannot be gainsaid that there is a possibility that such right may be exercised, under certain circumstances, abusively and maliciously, by mere tactics or strategy, for the evident purpose of causing inconveniences to the adverse party or injuring another's rights. It is a potential risk in every struggle or conflict of interests before the courts. In order to mitigate its impact as much as possible, the Rules fix a period for the exercise thereof which is generally short:

Part, by reason of the attachment, from September 17, 1962 to May 22, 1963, it alleged that the attachment was illegal and that it was not under the duty to pay the default storage charges claimed by defendant Port Authority. It moved for a declaration of its right of ownership of those sacks of sugar and for leave to remove them without paying the value of storage.

In that litigation before the federal court, V/O Prodintorg and the Russian company Czarnikow-Rionda Co. filed a stipulation on the sale of the sugar which had been attached. Subsequently (August 9, 1963) plaintiff and the Port Authority stipulated in writing that the sum claimed by the latter by way of storage up to the 7th of that month amount to $149,223.54. They also agreed to ratify the agreement of June 23 of that year made between V/O Prodintorg and Czarnikow-Rionda Co. for the sale of all the stored sugar. Two deposits were made in the case to guarantee the rights of the parties: the first for $25,336.80 on August 20, 1963, and the second for $132,506.18 on the 22d of the same month.

the period intervening between the filing of the complaint and the service of the motion for summary judgment or of the answer. Hardly any prejudice may have been caused, as a general rule, during such a short period. The prompt voluntary withdrawal may proclaim the innocence of defendant or appellee respecting the conduct complained of in the complaint.

■ Section 14 of the Judiciary Act of 1952, as amended by Act No. 115 of June 26, 1958 (Sess. Laws, p. 279), provided the procedures to review before this Supreme Court "the rulings" of the Court of First Instance. "Final judgments rendered by the Superior Court in civil cases [originated therein] involving or deciding a substantial constitutional question under the Constitution of the United States or the Constitution of Puerto Rico, and final judgments in criminal cases originated in the Superior Court," shall be appealable as a matter of law. "Any other judgment of the Superior Court" [in cases originated therein] are reviewable by way of certiorari at the discretion of this Court. (1) Judgments rendered by the Superior Court in appeals coming from the District Court, (2) proceedings to review "rulings, orders or resolutions" of administrative agencies, and (3) any "decision" of the Superior Court, may be reviewed by the Supreme Court by way of certiorari to be issued at its discretion, and not otherwise.

In order to prevent the filing in the trial court, during the prosecution of those appeals, of proceedings for the execution of the final judgment challenged, to maintain the status quo prevailing at the time of rendition, and in order that our ruling may not be merely academic or illusory, § 14 provides in part for the restricted stay of all proceedings before the Superior Court, in the petition for appeal as well as in that for review—which, as in certiorari, is granted discretionally—and also authorizes the Superior Court to "proceed with the suit as to any question involved therein

not comprised in the petition" for appeal or for review, in the following similar terms:

". . . The filing of notice of appeal shall stay all proceedings in the Superior Court with respect to the judgment or part thereof on appeal, or the questions comprised therein, but the Superior Court may proceed with the suit as to any question involved therein not comprised in the appeal, and if the judgment on appeal provides for the sale of goods liable to loss or deterioration, the Superior Court may order that the same be sold and the proceeds of the sale be deposited therein until the Supreme Court shall enter judgment.

" .      .      .      .      .      .      .      .      .

". . . The filing of a petition for review shall stay all proceedings in the Superior Court with respect to the judgment or part thereof whose review is sought, or the questions comprised therein, until the Supreme Court shall decide the proceeding. However, the Superior Court may proceed with the suit as to any question involved therein not comprised in the review proceedings, and if the judgment on appeal provides for the sale of goods liable to loss or deterioration, the Superior Court may order that the same be sold and the proceeds of the sale be deposited therein until the Supreme Court shall decide the proceeding."

Neither § 14 nor any other section of the Judiciary Act provides for the stay or continuation of the proceedings in the Superior Court upon the filing of a petition for certiorari in this Court. The same situation of law existed under §§ 297 and 298 of the Code of Civil Procedure prior to the adoption of the Rules of 1958.

█ In our opinion, the same reasons exist in every petition for certiorari, once the writ is issued and notified to the trial court, for staying in the latter court all proceedings respecting the order or resolution challenged, the proceeding challenged or the judgment on appeal in cases originating in the District Court, the suit continuing as to any question involved therein not comprised in the appeal. It is so re-

quired by a system of procedural equality and of positive guarantee and protection for the real effectiveness of all decisions. See Rule 71,[5] §§ 28 and 29 of the Code of Civil Procedure.

On many occasions when issuing writs of certiorari, without there being a special petition, we have adopted within the context thereof, under concurring particular circumstances, proper measures in aid of our jurisdiction and for the protection of the interests of the parties until the questions raised in the appeal have been decided. We know that in practice many courts, upon learning of the filing of a petition for certiorari before they are formally served with notice, adopt an attitude of caution of abstention in the continuation of the proceedings as to the matters involved in the appeal.

We should continue to follow the justiciable pattern which Mr. Justice De Jesús outlined with such clarity in *Méndez & Co.* v. *District Court*, 57 P.R.R. 829, 837 (1941), in stating among other things:

"In a certiorari proceeding there are two stages: the first consists in the issuance of the writ directed to the court which must send up the record of the proceedings to be reviewed. This order does not at all prejudge the matter in controversy. Its only purpose is to procure the transmission to the superior court of the record of the case for review. Of course, while it is definitely decided whether or not the writ lies the proceedings in the lower court are stayed for otherwise the remedy might become academic or illusory. Once the judgment on certiorari has been rendered, whether discharging or upholding the writ issued, the first decision disappears and only the second remains

---

[5] Rule 71 substantially reproduced part of § 36 of the Code of Civil Procedure. It left out of its context that part which provided: "When jurisdiction is, by this Code, or by another statute, conferred on a court or judicial officer, all the means necessary to carry it into effect are also given." This important provision has no counterpart in the Rules. It should be reinstated in Rule 71. We do not believe that the indefinite concept of inherent power may substitute it.

whereby the matter is finally adjudicated. It is a similar situation to that which arises in the case of a suit for injunction involving a restraining order, which corresponds to a writ of certiorari issued for the transmission of the record, the decision discharging or sustaining the writ of certiorari being the counterpart of the judgment granting or refusing the injunction. As in the case of a certiorari proceeding, the restraining order disappears and ceases to produce any legal effect from the moment when the decision granting or refusing the injunction is rendered. Therefore, the attorney for the intervener is not correct when he urges that upon the discharge of the writ of certiorari and the taking of the appeal from said order, there were suspended the proceedings which gave rise to the issuance of the writ in the first instance, that is, in order to procure the transmission of the record from the district court.

"In the opinion forming the basis of the order under review, the judge of the lower court says:

" 'It is firmly established that the issuance of a writ of certiorari, in the absence of any statute to the contrary, has the legal effect of taking the record out of the custody of the inferior tribunal, leaving nothing there which might serve as a basis for the issuance of execution, and operates as a stay of execution of the order or judgment to be reviewed. 14 C.J.S. 245, § 108.'

"We concede that upon the transmission of the record from the lower court to the higher court for review, the proceedings in the former are stayed but this is not because the record is actually in the reviewing court, but because if the proceedings in the lower court were to be continued, the writ of certiorari would became academic and illusory. In the Federal Courts, in California, and in the other jurisdictions where a supersedeas bond is required on appeal, if an appeal is taken and the supersedeas bond is not furnished, the judgment is executed in the lower court notwithstanding the pendency of the appeal and the fact that the record is in the appellate court. Moreover, in Puerto Rico, in accordance with our certiorari law (section 670 of the Code of Civil Procedure, 1933 ed.) it is not necessary to send up to the reviewing court the original record of the case it being sufficient if a certified copy thereof is transmitted. Assuming that the original record has been sent up and the same is required at any time in the lower court, the writ thereof may

be requested and the original substituted by a verified copy thereof."

We reiterated that doctrine in *Barreto* v. *District Court,* 59 P.R.R. 810, 816 (1942).

The propriety of plaintiffs' voluntary dismissal in the main action could not be involved in the petition for certiorari filed about five months prior thereto. Without an order restraining their right to desist voluntarily from their own claim, and the requirements provided by Rule 39.1(a)(1) having been met (there being no allegation amounting to an answer to the complaint or to a motion for summary judgment, since by the motion for intervention they only purported to make a third-party claim of ownership of personal property attached), no one could prevent the voluntary dismissal.

The discharge of the sugar attached, which was effective as soon as the notice of dismissal was served, as we have repeatedly said, deprived the motion for intervention of every cause of action or finality.[6]

---

[6] According to what occurred after petition for certiorari 62-101 was filed, December 28, 1962, perhaps it could be asserted that V/O Prodintorg caused the voluntary dismissal in the following May. Kane, in an action which commenced on September 19, 1962, seeks to collect in this country $833,978.12, amount of the judgment which they obtained on July 26, 1961, against the Government of the Republic of Cuba in a court of the State of Florida. In paragraph 3 of the complaint they alleged: "The said judgment rendered by the court of Florida is final and unappealable at law and has not been nor can be executed in the State of Florida." They attached the sugar unloaded which V/O Prodintorg claims belongs to it and not to defendant therein. The latter resorted to this Court by means of a petition for certiorari alleging that the San Juan Part of the Superior Court denied intervention for the purpose of seeking and obtaining the nullity of the attachment. We issued the writ on January 24, 1963. In the brief on the merits of the petition which they submitted on the following February 4, the attorneys for V/O Prodintorg, under the heading "New Matter" and referring to the averment *supra* of the complaint to the effect that the judgment sought to be collected was "final and unappealable at law," they alleged:

"Appellant's attorneys have reason to believe that the said averment is not true, appeal having been taken from the judgment on September 12,

Petitioner V/O Prodintorg alleges that it was affected by the original writ of attachment and that as a result it sustained damages, but that it cannot bring action for recovery in Puerto Rico because plaintiffs in the main action reside and have their domiciles in the State of Florida, they have no property in Puerto Rico, and are not subject to the jurisdiction of our courts in personal actions; and that in order that V/O Prodintorg may recover such damages judicially, we

1961, to the 'District Court of Appeal, Third District, Miami, Florida,' which appeal was numbered 61-827. In that petition for appeal a hearing was held on November 16, 1962, and by January 30, 1963 the case had not yet been decided. The grounds of our belief that the averment of the complaint is not true appear from the affidavit of Stanley L. Feldstein attached hereto."

Subsequently, on February 15, 1963, the same attorneys filed in this Court a "Motion for Leave to File Additional Exhibit." They attached thereto the original of a letter dated the 12th of that month, addressed to them and signed by the Clerk of the District Court of Appeals for the Third Circuit of the State of Florida, in which that officer informed them that there was pending in that court a petition for appeal from the said judgment of July 26, 1961, seeking collection before the San Juan Part of the Superior Court, and that the hearing on the merits of the appeal had been held on November 16, 1963.

On the morning of May 21, 1963, V/O Prodintorg moved this Court for an order to quash the writ of attachment and the attachment levied on the sugar in the main action, or "in the alternative, to require a bond of not less than the sum of $420,000 mentioned in that writ." As one of the grounds for such motion they alleged that on May 14, 1963, the Court of Appeals of the State of Florida had reversed the judgment of July 26, 1961 on which plaintiffs based their claim in the main action. It attached to its motion a certified copy of the judgment of reversal in which it is finally decreed: "Having found that the trial court lacked jurisdiction of the subject matter, the judgment appealed is reversed and the complaint dismissed."

That motion of V/O Prodintorg was filed in this Court at 11:10 a.m. of May 21, 1963. At 11:52 a.m. plaintiffs in the main action filed the notice of dismissal in the Superior Court, San Juan Part, of which they served written notice on this Supreme Court in the afternoon of the same day.

Plaintiffs having been placed in such a precarious situation, as if they were caught between a menacing and piercing sword and a dead end, the only way out to avoid prosecution of a cause which was obviously lost was the voluntary dismissal provided by Rule 39.1(a)(1) and then confront the liability for payment of any damages which they may have caused by the prosecution of their unsuccessful litigation.

are asked to set aside the dismissal and to order that the main action be reinstated, thereby reacquiring jurisdiction over the persons of Kane, "thus permitting that they be joined as third parties defendant or party plaintiff in the litigation pending between Puerto Rico Port Authority and appellant."

We cannot accede to such an unusual demand. We cannot and should not set aside actions performed under the authority of legal provisions authorizing them and which in some way we have sanctioned or have recognized value or effectiveness to them. Much less in consideration of a mere private interest or the personal convenience or comfort of a presumptive litigant. No court in Puerto Rico can be seriously asked to reinstate or give new life by judicial fiat to causes which have been properly dismissed, not to further prosecute the original claims made, but to retain and maintain forcibly under our jurisdiction those persons who were parties thereto and in order that they may confront new and distinct claims.

If for the reasons set forth in its brief those residents and domiciled in the State of Florida caused some compensable damage to V/O Prodintorg, and if for some legal reason it is not possible to sue them in Puerto Rico, said party should resort to the competent courts of justice of that state and litigate with them there.

The order of dismissal entered by the Superior Court, San Juan Part, in civil case No. 62-7300, will be affirmed in its entirety.